CHERRY and others, Appellants, vs. INDUSTRIAL COMMISSION and another, Respondents.

*November 16—December 19, 1944.*

For the appellants there was a brief by *La France & Edwards,* attorneys, and *Alfred E. La France* of counsel, all of Racine, and oral argument by *Mr. La France.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents Gill Brothers Mining Company and Bituminous Casualty Corporation there was a brief by *Grelle & Schlotthauer* of Madison, and oral argument by *Robert C. Grelle.*

FOWLER, J.   Eight miners were killed in two successive falls of the ceiling of a lead mine.   Two were employees of the owner of the mine in which the ceiling fell which we will call the "Cherry mine."   The two men were buried in a vast mass of rock and earth.   There were only five men available at the Cherry mine for rescue of the buried men and aid was necessary if the men were to be rescued alive.   It was not known whether the men were killed or whether if not they could be rescued alive.   Farrey, one of the mine owners, sent one of his employees over to the Gill mine which was owned by other parties for help.   The foreman of the Gill mine, on being told of the cave-in and the burying of the men, said "We will be right over."   He told employees who had not gone down in the mine yet "to go on ahead" and he would go down in the mine and get the rest and "we will bring some tools and be right over."   Six employees of the Gill mine owners to whom this direction was given went right over and the foreman and the other Gill mine employees followed.   While the six men were working at the rescue of the two buried men the second cave-in occurred and they were all buried and dead when uncovered.

The examiner for the commission found that Howell, one of·the six buried employees of the Gill mine, was an employee of the Cherry mine owners when engaged in the rescue work, and that the applicant for compensation, the mother of Howell, was wholly dependent on him for support.   An award was made to her on that basis.

The owners of the Cherry mine contest the award on two grounds. They claim, (1) that Howell was an employee of the Gill mine owners and that the owners of that mine are liable for compensation; and (2) that the deceased's mother was only partially dependent on him for support.

(1) As to whose employee Howell was, the case is governed by *Conveyors Corp. v. Industrial Comm.* 200 Wis. 512, 228 N. W. 118. In that case Collins, an employee of the Conveyors Corporation, was overcome by gas in a tank while at work for the Conveyors Corporation in installing an ash conveyor on premises of the Seaman Body Corporation. His coemployee called on some employees of the Seaman Body Corporation on whose premises the Conveyors Corporation was installing the conveyor who were working near the tank for aid in rescuing Collins. One of these men while engaged in rendering the aid called for was also overcome by gas and died as a result of the exposure. The only difference between the *Conveyors Case, supra,* and this is that in this case an owner of the Cherry mine requested the help while in the other an employee of the Conveyors Corporation requested it, and in this case the foreman of the Gill mine told the men to render the aid while in the other the men went without being told to go by anyone in authority over them. But the basis of the holding in the *Conveyors Corp. Case* was that the coemployee of Collins had implied authority to request the help because it is the duty of an employer to rescue his employees from a position of imminent danger in an emergency and the duty of a coemployee of one in such danger to rescue his fellow servant in such position. Thus the implied authority in the *Conveyors Case* is the full equivalent of the Cherry mine owner's authority in the instant case and the duty of the employers to rescue their men was precisely the same.

It is urged here that it was not known whether the two buried Cherry mine employees could be rescued alive, but

neither was it known that Collins could be resuscitated. The two cases are thus identical in both respects.

The appellants contend that the instant case is ruled by *Rhinelander Paper Co. v. Industrial Comm.* 206 Wis. 215, 239 N. W. 412. In that case an engineering company was replacing boilers in the Paper Company's plant. The Paper Company had instructed its employees to assist the engineering company's employees in their work of installation whenever requested to do so in order that the installation might be completed as soon as possible. Thus the assistance was rendered for the advantage and benefit of the Paper Company. An employee of the Paper Company was injured while assisting an engineering company's employee at his request. His work of assistance was being done in the conduct and in the regular course of the Paper Company's business. The Paper Company was therefore his employer under the definition of the term in the compensation act, sec. 102.04, Stats.

In the instant case the work of rescue in which Howell was engaged was not being done in the regular course of the Gill mine owners' business. That work was not done for the benefit of those owners, and could not result in advantage to their business, and they had no duty to aid in the work of rescue. The duty of rescue devolved solely upon the Cherry mine owners. The work of rescue was done in the course of the performance of that duty and at their direction and thus in the regular course of their business. Thus they were Howell's employers.

(2) The deceased wholly supported a family consisting of himself, his widowed mother, sixty-five years of age, his sister Jennie, a deaf mute, forty-two years of age, and two minor nephews Robert and Joyce Howell, aged nine and ten years. The family lived in a house worth about $1,400, in which the mother had a life estate. The mother must be held to have contributed shelter toward the support of the family but the net rental value, less taxes, insurance, and water rate,

all which the deceased paid, and disregarding physical upkeep, amounted to about $100 per year. The value of the life estate was worth "slightly over $400." The commission found the contribution of the mother to be *de minimis non curat lex* within the rule of *McKesson-Fuller-Morrisson Co. v. Industrial Comm.* 212 Wis. 507, 250 N. W. 396, where the bed-ridden mother of a deceased employee living with him had a $1,000 bond on which she received interest of $62.50 a year, and awarded compensation on the basis of total dependency. The circuit court sustained the conclusion and award of the commission in the instant case and we consider its confirmation of the finding and conclusion of the commission was correct.

*By the Court.*—The judgment of the circuit court is affirmed.