APPLIED PLASTICS, INC., and U.S. Fire Insurance Company, Plaintiffs-Appellants,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Charles Klein, and State of Wisconsin, Defendants-Respondents.

Court of Appeals

*No. 84–366. Submitted on briefs September 17, 1984.—
Decided October 25, 1984.*
(Also reported in 359 N.W.2d 168.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Kasdorf, Dall, Lewis & Swietlik, S.C.,*

with *Nonald J. Lewis* and *David L. Styer* of counsel, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, with *Stephen M. Sobota,* assistant attorney general, of counsel, of Madison.

For defendant-respondent Charles Klein the cause was submitted on the briefs of *Michael L. Wagner, S.C.,* with *Michael L. Wagner* of counsel, of Fond du Lac.

Before Wedemeyer, P.J., Moser and Sullivan, JJ.

SULLIVAN, J. Applied Plastics, Inc., and its insurer, U.S. Fire Insurance Company, (collectively, Applied Plastics) appeal from a judgment affirming an order of the Labor and Industry Review Commission (LIRC). LIRC had reversed the findings and order of the hearing examiner and awarded maximum death benefits to the guardian of the minor child of Henry Klein, Jr. (Klein). LIRC concluded that at the time of his death Klein was performing services growing out of and incidental to his employment, within the purview of the Worker's Compensation Act. Because LIRC did not act without or in excess of its powers when it concluded that Klein's fatal injury arose out of his employment, we affirm.

The facts found by LIRC are virtually undisputed as are many of the inferences drawn from those facts. It is chiefly the application of statutory law to the facts which sparks this controversy.

Klein was employed as president, and was the major shareholder, of Applied Plastics, a manufacturer. James Earle (Earle) was a maintenance worker and sometime foreman there. Apart from their association through employment, Earle and Klein enjoyed no personal relationship whatsoever. Earle had told his girlfriend that he did not like Klein and had told a co-employee that he did not like the way Klein ran his business. Earle said he felt Klein's family members received favoritism.

Klein made it his practice to give employees rides to work when, because of transportation problems, they could not get to work on their own. Klein did this to insure that the plant would operate with sufficient help. Klein gave Earle a ride to work on one occasion in mid-September of 1979. En route to the plant, Klein saw Earle walking along the street and picked him up. On the same day or in the same week, Earle requested a co-worker to drive him, during their lunch break, to a commuter parking lot on College Avenue in the city of Milwaukee, about two miles from the Applied Plastics plant. Earle said he had left his motor home there because the engine had been sputtering. The co-worker noticed, however, that when Earle turned the ignition, the engine started right away.

On September 25, 1979, Earle told his supervisor he would not be at work the next day. On September 26, 1979, about a week after the occasion when Klein gave Earle a ride to the plant, Klein began his day in routine fashion by driving his minor son to school. Klein was not heard from again until 9:40 a.m. when he telephoned his secretary. He told her to cancel all of his appointments for the day. At about 10:15 a.m. Klein called again and told his secretary to arrange to have his son picked up from school that day. He called again at 10:30 a.m. and told his secretary he needed $15,000 but that he was on his way to Chicago and could not get the money himself and that, therefore, she should withdraw the sum in cash from his bank. Klein called five or six more times between 10:30 a.m. and 3:40 p.m., each time discussing, in an ever more urgent tone, the details of obtaining the $15,000. He instructed his secretary not to let anyone know what she was doing. In his last call Klein told his secretary to place the money on his office desk and lock the office, which she did. No one ever came for the money.

At noon on the same day, Earle's girlfriend went to her apartment to have lunch and found Earle there with his motor home parked in the lot. Earle told her he was having problems with his motor home and had stopped to fix it. His girlfriend noticed that the window drapes of the motor home were closed.

At approximately 5:25 p.m. that day, at a commuter parking lot located just west of Milwaukee county, Earle shot Klein to death with a revolver. He then killed himself with the same gun. When found, Klein's face and head showed signs of having been severely beaten, and the remnants of a plastic bag were tied around his neck with a piece of rope. Klein's automobile was later found parked at the College Avenue commuter parking lot about two miles from the Applied Plastics plant.

Charles Klein, the guardian of Henry Klein's minor son, applied on the minor's behalf for death benefits under the Worker's Compensation Act. When benefits were denied, Charles Klein appealed to LIRC. LIRC reversed the hearing examiner's findings of fact and order and made its own findings and order, resulting in an award of maximum death benefits to be held in trust for Henry Klein's son.

LIRC inferred from the facts that on September 26, 1979, Earle carried out a premeditated plan to abduct Klein at gunpoint and extort $15,000 from him. LIRC concluded that Klein sustained a compensable fatal injury under the Worker's Compensation Act insofar as Klein "was performing a service growing out of and incidental to his employment when he picked up James Earle on his way to work" and the "fatal assault visited upon [Klein] was the result of an employment-created danger, i.e., his employer-employe relationship with James Earle."

Applied Plastics sought review of the award in circuit court. The circuit court affirmed, and this appeal followed.

Section 102.03 (1), Stats., provides in relevant part that liability under the Worker's Compensation shall exist where the following conditions concur: "(a) Where the employe sustains an injury"; "(c) 1. Where, at the time of the injury, the employe is performing service growing out of and incidental to his employment"; and "(e) Where the accident or disease causing injury arises out of his employment." Section 102.23 (1) (d), Stats., provides that a reviewing court may set aside an order or award of the commission upon the following grounds: (1) the commission acted without or in excess of its powers; (2) the order or award was procured by fraud; (3) the findings of fact by the commission do not support the order or award.

LIRC's findings of fact are conclusive on appeal so long as they are supported by credible and substantial evidence. Sec. 102.23 (6), Stats.; *Nottelson v. DILHR,* 94 Wis. 2d 106, 114, 287 N.W.2d 763, 767 (1980). The drawing of one of several reasonable inferences from undisputed facts also constitutes fact finding. *Vande Zande v. DILHR,* 70 Wis. 2d 1086, 1094, 236 N.W.2d 255, 259 (1975). Any legal conclusion drawn by LIRC from its findings of fact, however, is a question of law subject to independent judicial review. *Nottelson,* 94 Wis. 2d at 114–15, 287 N.W.2d at 767.

When the question on appeal is whether a statutory concept embraces a particular set of factual circumstances, the court is presented with mixed questions of fact and law. *See id.* at 115, 287 N.W.2d at 767–68. The conduct of the parties presents a question of fact and the meaning of the statute a question of law. *Id.* The application of the statute to the facts is also a question of law. *Id.* at 115–16, 287 N.W.2d at 768. However, the application of a statutory concept to a set of facts frequently also calls for a value judgment; and when the

administrative agency's expertise is significant to the value judgment, the agency's decision is accorded some weight. *Id.* at 117, 287 N.W.2d at 768. *See also Nigbor v. DILHR,* No. 82–2357, slip op. at 7–8 (Wis. Oct. 2, 1984).

Applied Plastics does not contest LIRC's findings and inferences to the effect that on the morning of September 26, 1979, Earle contrived to be walking along the road he knew to be Klein's normal route to the plant in order to take advantage of Klein's practice of driving employees to work; that Klein stopped to give Earle a ride; that Earle then forced Klein to drive to the College Avenue lot, to park his auto and to enter Earle's motor home; that Earle made extortionate threats; that Earle perpetrated physical violence on Klein; and that Earle ultimately shot Klein to death. What Applied Plastics disputes is the conclusion that the fatal injuries arose out of Klein's employment and that the injuries were sustained while Klein was performing services incidental to his employment.

## INJURIES ARISING OUT OF EMPLOYMENT

Applied Plastics argues first that Klein's fatal injuries did not arise out of his employment within the meaning of sec. 102.03(1)(e), Stats. It argues that LIRC erroneously applied a presumption that an unexplained death arises out of employment when the employee is found dead under circumstances indicating that death took place within the time and space limits of the employment. Applied Plastics contends that since Klein's death did not occur within the space boundaries of his employment, the presumption was inapplicable. *See* 1 A. Larson, *The Laws of Workmen's Compensation,* sec. 10.32 (1984).

It would indeed have been error for LIRC to apply the aforementioned presumption, but not for the reasons

Applied Plastics suggests. The presumption has never been adopted by the Wisconsin courts. *See Allied Manufacturing, Inc. v. DILHR,* 45 Wis. 2d 563, 567–68, 173 N.W.2d 690, 692 (1970).

In any case, it is apparent that LIRC applied, and correctly so, the "positional risk" doctrine followed by our supreme court for some thirty years. *See e.g., id.* at 567, 173 N.W.2d at 692; *Nash-Kelvinator Corp. v. Industrial Commission,* 266 Wis. 81, 86, 62 N.W.2d 567, 570 (1954). The positional risk doctrine holds that an accident arises out of employment when the connection between the employment and the accident is such that the circumstances of the employment place the employee in the particular place at the particular time when he is injured by a force which is not solely personal to him. *See Cutler-Hammer, Inc. v. Industrial Commission,* 5 Wis. 2d 247, 253–54, 92 N.W.2d 824, 827 (1958). Put another way, the doctrine makes an injury compensable if it would not have happened but for the fact that the conditions or obligations of employment placed the employee in the position he or she was in when the injury occurred. *Nash-Kelvinator,* 266 Wis. at 86, 62 N.W.2d at 570 (1954). All that is required is that the conditions of employment create the "zone of special danger" out of which the injury arose. *Id.* (citation omitted). An injury can arise out of employment even though the accident which caused the injury was not "caused by the employment." *See Cutler-Hammer,* 5 Wis. 2d at 253, 92 N.W.2d at 827.

There is no dispute about LIRC's finding that Klein regularly picked up employees of Applied Plastics and transported them to work. There also is no apparent dispute about LIRC's inference that Klein gave Earle a ride on the morning of the murder-suicide. The dispute centers on LIRC's conclusion that Klein's assault and

murder arose out of his employment. We are satisfied that the conclusion was tenable.

In *Allied Manufacturing* the supreme court applied the positional risk doctrine to uphold a death benefit award in the case of an office worker found stabbed to death after working hours, the assailant of whom was never found. The court said the fact that the employee had been required to work in an isolated location in the building placed her in a zone of special danger. 45 Wis. 2d at 568, 173 N.W.2d at 692. The court quoted with approval the doctrine laid down in *Nash-Kelvinator*, 266 Wis. at 86, 62 N.W.2d at 570, that when the work environment is one of the causative factors of the assault, it is immaterial whether the assailant's motive was work-connected. 45 Wis. 2d at 568, 173 N.W.2d at 693.

Likewise, in the instant case, Klein's position at Applied Plastics made him a target of one who, like Earle, might wish to extort money. Klein was thus in a zone of special danger. His access to large sums of money, together with his established practice of transporting employees to the plant for the benefit of the corporation, constituted the conditions of employment but for which the fatal injury would not have occurred. *See Nash-Kelvinator, supra.* According due weight to LIRC's expertise in the application of worker's compensation statutes and doctrines to concrete facts, we conclude that Klein's fatal injuries arose out of his employment.

## *SERVICES INCIDENTAL TO EMPLOYMENT*

Applied Plastics next argues that Klein's fatal injuries were not incurred while he was performing services growing out of and incidental to his employment. Applied Plastics asserts the record does not support a find-

ing that Klein even commenced work on the day in question.

LIRC concluded that Klein, as Earle's employer, had an interest in seeing to it that Earle arrived at work in a timely fashion and that, therefore, Klein was performing a service growing out of and incidental to his employment when he stopped to give Earle a lift. We agree.

"The test of recovery is not a causal relation between the nature of employment of the injured person and the accident. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose."

*Fels v. Industrial Commission,* 269 Wis. 294, 298, 69 N.W.2d 225, 227 (1955) (citations omitted). Worker's compensation law must be liberally construed to include all service that can be reasonably said to come within it. *Id.* at 297, 69 N.W.2d at 226. Klein's picking up Earle was a self-imposed obligation of his employment as president of Applied Plastics and thus can be reasonably said to have grown out of his employment.

Applied Plastics disputes LIRC's finding of fact that the only relationship Klein had with Earle was their employer-employee relationship. Applied Plastics asserts "there may have been countless other reasons for their being together on that day." This statement is sheer speculation. Credible and substantial evidence supports LIRC's inference that Klein and Earle had no other relationship than that of employer-employee. Therefore, we are not faced with a situation where the origin of the assault was purely private and personal, neither engendered nor facilitated by the employment. *Cf. Goranson v. DILHR,* 94 Wis. 2d 537, 556–57, 289 N.W. 2d 270, 279–80 (1980).

Applied Plastics also argues that evidence suggests that Earle desired to start his own business and that the extortion attempt may have been prompted by this desire. Applied Plastics contends that such an action "could not more clearly be inimical to the employer's interests and, therefore, a circumstance not connected to such employment." The assailant's motive in a positional risk case is irrelevant to the determination whether injuries arose out of employment. *See Allied Manufacturing, supra.* The assailant's motive must also be irrelevant, *a fortiori,* to the inquiry whether at the time of injury, the injured employee was performing services growing out of and incidental to his employment. If Klein was performing a service growing out of his employment when he picked up Earle, and we have determined that he was, we need inquire no further. Without a doubt, Earle's abducting, beating and killing his employer's president was inimical to the employer's interest; and that would be true whether Earle's motive was to gain money to start a business or simply to do harm to Klein. But the adversity of the assailant's actions to the employer's interest is not material to the determination whether the injured employee was performing work-related services at the time of injury.

In conclusion, giving appropriate deference to LIRC's expertise in interpreting the concepts contained in sec. 102.03(1), Stats., we uphold the determination that Klein's fatal injuries arose out of his employment and that he was engaged in the performance of services growing out of and incidental to his employment when the injuries occurred. Because LIRC did not act without or in excess of its powers in ordering the award of death benefits, the circuit court correctly affirmed LIRC's order. Accordingly, we affirm the judgment of the circuit court.

*By the Court.*—Judgment affirmed.