MICHELS PIPELINE CONSTRUCTION, INC. and Northern Insurance Co. of New York, Plaintiffs-Appellants,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Northshore Constructors and Threshermen's Mutual Ins. Co., Defendants-Respondents,

Lyle M. GAMROTH, Defendant.

Court of Appeals

*No. 95–0703. Submitted on briefs September 6, 1995.—Decided October 31, 1995.*

(Also reported in 541 N.W.2d 241.)

†Petition to review denied.

For the plaintiffs-appellants the cause was submitted on the briefs of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, with *Ahmed J. Quereshi*, of Milwaukee.

For the defendants-respondents Labor and Industry Review Commission the cause was submitted on

the briefs of *James E. Doyle*, attorney general, and *Stephen M. Sobota*, assistant attorney general.

For the defendants-respondents Northshore Constructors and Threshermen's Mutual Insurance Co. a reply brief was submitted by *Borgelt, Powell, Peterson & Frauen, S.C.*, with *Jennifer M. Collington*, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SCHUDSON, J. Michels Pipeline Construction, Inc., and Northern Insurance Co. of New York (collectively "Michels Pipeline") appeal from a circuit court judgment upholding a Labor and Industry Review Commission order. LIRC held that Lyle M. Gamroth, a Northshore Constructors employee who was injured during the course of his attempted rescue of a Michels Pipeline employee, became a Michels Pipeline employee under the Worker's Compensation Act. Michels Pipeline argues that it should not be liable for Gamroth's injuries because no Michels Pipeline employee ever specifically requested that Gamroth assist in the rescue. We conclude that LIRC correctly extended the *Conveyors / Cherry* doctrine to include the circumstances of Gamroth's attempted rescue even though his specific assistance was not explicitly requested. Therefore, we affirm.

The facts surrounding this appeal are undisputed. On May 1, 1991, Gamroth was a crane oiler employed by Northshore Constructors, working at a job site of the Milwaukee Deep Tunnel Project. Michels Pipeline was working on an unrelated job approximately 50 to 100 feet away.[1] Paul Sipple, a Michels Pipeline employee,

---

[1] Although both jobs were related to the Deep Tunnel Project, they were unrelated to each other. Michels Pipeline

ran over to where Gamroth and John Radke, another Northshore employee, were working and asked to borrow a stretcher for Radke's brother, Michael, who was a Michels Pipeline foreman. Michael had been accidentally hit by a concrete pipe and was lying at the bottom of a forty foot shaft. Radke and Gamroth gave Sipple the stretcher and ran over to the accident site. John Radke then went down into the shaft. He was the only non-Michels Pipeline employee at the bottom of the shaft when an unidentified Michels Pipeline employee in the shaft called up for additional help. Responding to the call, Gamroth climbed down a ladder into the shaft, but fell off the ladder and was injured.

LIRC adopted the conclusion of the administrative law judge, who applied the *Conveyors / Cherry* doctrine, which holds that if an employee of one employer is injured while attempting to rescue an employee of another employer, the rescuing employee becomes an employee of that other employer for purposes of liability under the Worker's Compensation Act. *See Conveyors Corp. v. Industrial Comm'n*, 200 Wis. 512, 228 N.W. 118 (1930); *Cherry v. Industrial Comm'n*, 246 Wis. 279, 16 N.W.2d 800 (1944). LIRC found that Gamroth was injured while attempting to rescue a Michels Pipeline employee and, thus, was an employee of Michels Pipeline under the Worker's Compensation Act. The trial court affirmed LIRC's order.

We review the decision of the administrative agency, not the trial court. *See Barakat v. DHSS*, 191 Wis. 2d 770, 778, 530 N.W.2d 392, 395 (Ct. App. 1995).

---

concedes "that if 'unrelated' means that Michels Pipeline and Northshore Constructors had different job sites and different work to perform, then [LIRC's finding that the jobs were unrelated] is supported by credible evidence."

Whether Gamroth was a Michels Pipeline employee at the time he was injured presents a mixed question of fact and law: what happened at the job site presents questions of fact, while LIRC's conclusion that Gamroth was a Michels Pipeline employee under the Worker's Compensation Act presents a question of law. *See Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d 271, 276, 359 N.W.2d 168, 171 (Ct. App. 1984). When presented with a mixed question of fact and law on administrative review, we employ the following standard of review:

> LIRC's findings of fact are conclusive on appeal so long as they are supported by credible and substantial evidence. The drawing of one of several reasonable inferences from undisputed facts also constitutes fact finding. Any legal conclusion drawn by LIRC from its findings of fact, however, is a question of law subject to independent judicial review.
>
> When the question on appeal is whether a statutory concept embraces a particular set of factual circumstances, the court is presented with mixed questions of fact and law. The conduct of the parties presents a question of fact and the meaning of the statute a question of law. The application of the statute to the facts is also a question of law. However, the application of a statutory concept to a set of facts frequently also calls for a value judgment; and when the administrative agency's expertise is significant to the value judgment, the agency's decision is accorded some weight.

*Id.* (citations omitted).

Michels Pipeline argues that because the unidentified Michels Pipeline employee who called for additional help did not specifically request Gamroth's assistance, LIRC erred in concluding that Gamroth

was its employee under the *Conveyors/Cherry* doctrine. Michels Pipeline points out that in both *Conveyors* and *Cherry*, there were specific requests to employees of another employer to assist in the rescues of the first employer's employees. Michels Pipeline argues, therefore, that:

> [a]n indispensable requisite before the *Conveyors Corporation/Cherry* doctrine can be applied is a *specific* request by an employer (or one of its employees) of another employer (or its employees) for the presence and use of the other employer's employees at its work site in order to assist in the rescue.

We reject Michels Pipeline's argument.

Under § 102.04(1)(e), STATS., an "employer" is otherwise defined, *see* § 102.04(1)(a)-(d), as one "who has any person in service under any contract of hire, express or implied." Section 102.07(4), STATS., defines an "employe" as "[e]very person in the service of another under any contract of hire, express or implied." Section 102.03(1)(c)1, STATS., imposes worker's compensation liability on an "employer" "[w]here, at the time of injury, the employe is performing service growing out of and incidental to his or her employment." In *Conveyors* and *Cherry*, the Wisconsin Supreme Court has interpreted these statutory sections in situations where an employee of one employer goes to the rescue or assistance of an employee of another employer and is injured during the course of rendering assistance. *See also West Salem v. Industrial Comm'n*, 162 Wis. 57, 155 N.W. 929 (1916); 1B ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 47.42(c) & n.50, § 48.21 & n.49 (both sections citing *Conveyors* and *Cherry*).

932

In *Conveyors*, Collins, a Conveyors workman, was installing equipment at the power plant of the Body Corporation. Becker, a Conveyors employee who was to supervise the work, found Collins lying in the bottom of an ash conveyor tank, overcome by toxic gas. Becker, who could not remove Collins by himself, went to the nearest place for help, which was the Body Corporation's boiler room. Body's head fireman and two assistants went to help rescue Collins. One of the assistants died as a result of exposure to the gas. *Conveyors*, 200 Wis. at 513-514, 228 N.W. at 119.

The Wisconsin Supreme Court held that the Body Corporation assistant was a Conveyors Corporation employee under the Worker's Compensation Act. Rejecting the argument that the Body assistant was a Body employee under the Act, the supreme court explained that the assistant "in assisting to rescue Collins was performing no service for the Body Corporation and his act towards rescue was in no sense incidental to his duties under his contract of employment with that corporation. Upon no theory could the Body Corporation be liable." *Id.* at 515, 228 N.W. at 120. The supreme court noted that "a contract of employment by implication" arose due to an employer's duty to rescue its employees from "a position of imminent danger in an emergency." *Id.* Because a corporation can only act through its employees or agents, Becker owed a duty to Conveyors to rescue Collins. *Id.* at 516, 228 N.W. at 120. The supreme court concluded:

> Becker could not remove Collins alone. In the emergency he was by necessary implication authorized to procure assistance. Those whom he procured were during the rescue acting for the employer of

Collins and Becker, the Conveyors Corporation. Compliance with the request of Becker for assistance under the circumstances constituted them employees of that corporation. One so complying is not a volunteer, but an employee within the meaning of the act, whether the employee making the request has express authority to procure help or any emergency exists from which authority is implied.

*Id.* (citations omitted).

Similarly, in *Cherry*, the supreme court held that a deceased mine worker who attempted to assist in the rescue of employees from another mine became an employee of the other mine under the Worker's Compensation Act. *Cherry*, 246 Wis. at 280-282, 16 N.W.2d at 801-802. In *Cherry*, mine workers were in two lead mines, the "Cherry mine," and the "Gill mine." Two Cherry mine workers were buried in a cave-in. The foreman from the Cherry mine sent one of his employees to the Gill mine for help. The Gill foreman sent some of his workers to help with the Cherry mine rescue, but a second cave-in occurred at the Cherry mine, killing the Gill employees. *Id.* at 280, 16 N.W.2d at 801. The supreme court concluded that the deceased Gill employee "was an employee of the Cherry mine owners when engaged in the rescue work" because the rescue work was done in the course of the Cherry mine owners' duty of rescue "and at their direction and thus in the regular course of their business." *Id.* at 280-282, 16 N.W.2d at 801-802.

■

We conclude that the *Conveyors / Cherry* doctrine does, indeed, govern this case. The ALJ found that John Radke was the only non-Michels Pipeline employee in the shaft at the time someone else in the shaft called for help. Thus, the ALJ implicitly found

934

that a Michels Pipeline employee was requesting help for Michael Radke, a Michels Pipeline employee. Those findings are supported by credible and substantial evidence. *See Applied Plastics, Inc. v. LIRC*, 121 Wis. 2d at 276, 359 N.W.2d at 171.

Under the circumstances of this case, the fact that no Michels Pipeline employee specifically requested that Gamroth climb down the shaft is immaterial. Gamroth's rescue attempt was not a part of his regular duties or responsibilities for Northshore Constructors. Northshore received no benefit from Gamroth's rescue attempt. Gamroth was never informed that his assistance was unnecessary or unwanted. According to Gamroth's testimony before the ALJ, he saw Michael Radke lying at the bottom of the tunnel, not moving and covered with debris. He responded to the call for help. Michels Pipeline's argument would have required Gamroth to wait until a Michels Pipeline employee specifically called for his aid, or would have required Michels Pipeline employees to first specify that they wanted assistance from fellow Michels Pipeline employees and, only after not receiving sufficient assistance from them, to call for help from non-Michels Pipeline workers. Both prospects are absurd and contrary to the "duty of rescue" under the *Conveyors / Cherry* doctrine.[2]

---

[2] Michels Pipeline also argues that we should hold Northshore liable for Gamroth's worker's compensation payments under the "positional risk" doctrine announced in *Water v. Taylor Co.*, 218 N.Y. 248 (N.Y. 1916). In *Water*, a worker employed by one company went to the rescue of an employee of another company where both employees were working on the same general construction site. The New York Court of Appeals held that the rescuing employee's employer was liable for the employee's worker's compensation because the employee was injured

*By the Court.*—Judgment affirmed.

"while he was at work on the undertaking for which he had been hired, and, therefore, during the course of his employment." *Id.* at 250. We decline Michels Pipeline's invitation to adopt *Waters* in place of the *Conveyors/Cherry* doctrine. Significantly, the *Waters* decision did not discuss the issue of whether the other employer should be held liable when a non-employee came to aid one of its workers. Additionally, although the Wisconsin Supreme Court has invoked the "positional risk" doctrine, *see Allied Mfg., Inc. v. DILHR*, 45 Wis. 2d 563, 567, 173 N.W.2d 690, 692 (1970), it has never done so in any way that would vitiate the *Conveyors/Cherry* doctrine.