HONTHANERS RESTAURANTS, INC. and North River
Insurance Co., Plaintiffs-Appellants,†

v.

LABOR AND INDUSTRY REVIEW COMMISSION and Dawn
Marie Stanislowski, Defendants-Respondents.

Court of Appeals

*No. 99–3002. Submitted on briefs September 5,
2000.—Decided November 28, 2000.*

## 2000 WI App 273

(Also reported in 621 N.W.2d 660.)

†Petition to review denied.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Robert P. Ochowicz* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen M. Sobota*, assistant attorney general.

On behalf of the defendant-respondent Dawn Marie Stanislowski, the cause was submitted on the brief of *Anthony J. Skemp* of *Domnitz, Mawicke & Goisman, S.C.*, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

¶ 1. CURLEY, J. Honthaners Restaurants, Inc., and its worker's compensation carrier, North River Insurance Company (collectively, "Honthaners") appeal the Labor and Industry Review Commission's award to Dawn Marie Stanislowski of additional temporary total disability payments and additional medical expenses. Honthaners argues that the Commission exceeded its authority under WIS. STAT. § 102.42(1) because the law permits Stanislowski to be awarded benefits only if her medical treatment and expenses were necessary and reasonable.[1] Honthaners contends that the Commission's finding that Stanislowski had been medically "overdiagnosed and overtreated" was tantamount to a finding that Stanislowski's treatment and medical expenses were unreasonable and unnecessary. Honthaners also submits that the Commission improperly interpreted the holding in *Spencer v. DILHR*, 55 Wis. 2d 525, 200 N.W.2d 611 (1972), as permitting the award of benefits for Stanislowski's overdiagnosed and over-treated injury. Alternatively, Honthaners argues that, even if *Spencer* is dispositive, it has been overturned by legislative amendment. We affirm.

¶ 2. In reviewing the Commission's decision and giving it great weight deference, we conclude that *Spencer* controls and creates an exception to the WIS. STAT. § 102.42(1) rule awarding benefits only for reasonable and necessary medical treatment and expenses. Since Stanislowski, like the claimant in *Spencer*, suffered an undisputed compensable injury which generated a conflict between the medical experts as to the degree of her injury and its duration, she is entitled to be compensated for her additional medical

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

treatment and her expenses because she accepted the additional treatment in good faith.

## I. BACKGROUND.

¶ 3.   Stanislowski injured her right arm on July 9, 1994, while working at a George Webb's Restaurant owned by Honthaners Restaurants, Inc. Stanislowski related that when she flipped some eggs in a frying pan, she heard a "pop" in her right elbow, lost strength in her arm and experienced pain. Honthaners did not object to her initial application for worker's compensation. As a consequence, Stanislowski was awarded temporary total disability from August 16, 1994, through February 4, 1995, in addition to the payment of her accrued medical expenses for that time period.

¶ 4.   Later, Stanislowski sought additional temporary total disability payments, permanent partial disability benefits and payment for additional medical expenses. Honthaners objected, and after a contested hearing, the administrative law judge (ALJ) determined that Stanislowski had not met her burden of proof and that she was entitled to no further compensation. The ALJ reached this decision after hearing Stanislowski's testimony, reviewing the medical records, and watching a surveillance tape of Stanislowski performing a number of tasks with her right arm.

¶ 5.   Stanislowski appealed the ALJ's decision to the Labor and Industry Review Commission. The Commission reversed the decision of the ALJ. In its decision, the Commission related Stanislowski's medical history. It noted that Stanislowski was first treated for her injury in August of 1994 by Dr. Bogunovic, who recommended that Stanislowski not work. During the course of Stanislowski's treatment, Dr. Bogunovic also referred Stanislowski to two other doctors who

examined her and generally agreed with his diagnosis. Although Dr. Bogunovic originally authorized Stanislowski to go back to work in April of 1995, she did not return because she claimed she could not hold any substantial weight in her right hand. Stanislowski continued her treatment with Dr. Bogunovic and, on March 26, 1996, he "opined that she had reached a healing plateau." He also evaluated her injury and "assessed 50 per cent permanent partial disability at the right elbow."

¶ 6. The Commission also reviewed the medical reports and opinion of Dr. McCabe, who saw Stanislowski at the request of the worker's compensation insurer. Dr. McCabe examined Stanislowski on three occasions. At the first visit, in August 1994, Dr. McCabe agreed that Stanislowski suffered an injury at work, but unlike Dr. Bogunovic, Dr. McCabe recommended light duty work and physical therapy. Dr. McCabe next saw Stanislowski on February 9, 1995. At that time, Dr. McCabe found Stanislowski's complaints to be unsupported by any physical findings. In sharp contrast to Dr. Bogunovic's medical opinion, Dr. McCabe wrote that Stanislowski's injury was temporary in nature, and that it should have healed within one month of the injury. Dr. McCabe's report also stated, "We would be concerned that the patient simply chooses not to work." Dr. McCabe last examined Stanislowski on January 8, 1998. At that time, he reiterated that Stanislowski reached a healing plateau far earlier than the time suggested by Dr. Bogunovic, and that she suffered from no permanent disability. Another doctor, Dr. Dzwierzynski, also hired by Honthaners, agreed with Dr. McCabe's assessment of Stanislowski and rejected the diagnosis of Dr. Bogunovic.

239

¶ 7. Before reaching its decision, the Commission also conferred with the ALJ. The ALJ advised the Commission that he had not found Stanislowski to be a credible witness. Nevertheless, the Commission reversed the ALJ's decision and ordered Honthaners to pay Stanislowski temporary total disability and certain medical expenses from February 4, 1995, through March 2, 1996.[2] It did, however, affirm the ALJ's finding of no permanent partial disability. In awarding additional benefits, the Commission did not adopt Dr. Bogunovic's opinion that Stanislowski suffered a permanent partial disability; instead, it adopted Dr. McCabe's opinion that Stanislowski's injury had resolved without any permanency. But because the Commission found that Stanislowski had been "overdiagnosed and over-treated," that she believed herself to be permanently disabled, and that she engaged in her prolonged medical treatment with Dr. Bogunovic in "good faith," the Commission reasoned that Stanislowski was eligible for continued benefits. It explained: "In accordance with *Spencer* the medical treatment she received and temporary disability she incurred up to Dr. Bogunovic's assessment of a healing plateau on March 26, 1996, is compensable regardless of its reasonableness or necessity." Honthaners then appealed the Commission's decision to the circuit court. There, Honthaners argued that the Commission misinterpreted *Spencer*'s holding in awarding Stanislowski benefits. The trial court affirmed, determining: "[T]he Commission[']s decision is reasonable and concords with the purpose of the statute. The court also concludes that the Commission's findings of fact and conclusions of law support the . . . award."

---

[2] One commissioner dissented from the decision.

## II. ANALYSIS.

¶ 8. We review the Commission's decision, not that of the circuit court. *See Stafford Trucking, Inc. v. DILHR*, 102 Wis. 2d 256, 260, 306 N.W.2d 79 (Ct. App. 1981).

¶ 9. Honthaners argues that the Commission's decision is in error because, "in ignoring the express language found in [WIS. STAT. § ] 102.42(1), [it] interpreted *Spencer* as requiring it to award Stanislowski temporary total disability and medical expenses from February 4, 1995, until March 26, 1996." Further, Honthaners submits that the facts of this case more closely resemble those in *City of Wauwatosa v. LIRC*, 110 Wis. 2d 298, 328 N.W.2d 882 (Ct. App. 1982), which, if followed, would require the Commission to reject Stanislowski's request for additional benefits.

¶ 10. In this appeal, we are presented with questions of fact and law. When presented with mixed questions of fact and law on administrative review, this court employs the standard of review set forth in *Michels Pipeline Constr., Inc. v. LIRC*, 197 Wis. 2d 927, 541 N.W.2d 241 (Ct. App. 1995):

> "LIRC's findings of fact are conclusive on appeal so long as they are supported by credible and substantial evidence. The drawing of one of several reasonable inferences from undisputed facts also constitutes fact finding. Any legal conclusion drawn by LIRC from its findings of fact, however, is a question of law subject to independent judicial review.
>
> When the question on appeal is whether a statutory concept embraces a particular set of factual circumstances, the court is presented with mixed questions of fact and law. The conduct of the parties presents a question of fact and the meaning of the

241

statute a question of law. The application of the statute to the facts is also a question of law. However, the application of a statutory concept to a set of facts frequently also calls for a value judgment; and when the administrative agency's expertise is significant to the value judgment, the agency's decision is accorded some weight."

*Id.* at 931 (citation omitted).

■

¶ 11.   In addition, here we accord the Commission's legal determinations great weight deference.

When, and to what degree, deference should be paid to an agency's decision in a given case has been the subject of much discussion in the supreme court and this court over the years. This discussion has culminated in *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995), where the supreme court, summarizing several prior cases, outlined three possible levels of deference courts should apply to an administrative agency's legal conclusions and statutory interpretations.

   According to *Harnischfeger*, courts should grant the highest level of deference—"great [weight] deference"—to the agency where: (1) it is charged with administration of the statute being interpreted; (2) its interpretation "is one of long-standing"; (3) it employed "its expertise or specialized knowledge" in arriving at its interpretation; and (4) its interpretation "will provide uniformity and consistency in the application of the statute."

*Barron Elec. Coop. v. PSC*, 212 Wis. 2d 752, 760–61, 569 N.W.2d 726 (Ct. App. 1997). Applying these criteria, we are satisfied that the Commission's decision must be given great weight deference. The Commission's interpretation of both WIS. STAT. § 102.42(1) and

*Spencer* is of long standing. Further, in interpreting both the statute and the case law, the Commission employed its expertise and specialized knowledge. Finally, its interpretation provided uniformity and consistency in the application of the law.

■

¶ 12.   Honthaners argues that great weight deference should not be given to the Commission's decision because the Commission has never previously decided a case with similar facts. We reject this argument because the Commission need not have decided a case with identical or similar facts in order for its decision to be given great weight deference. In *Town of Russell Volunteer Fire Dept. v. LIRC*, 223 Wis. 2d 723, 589 N.W.2d 445 (Ct. App. 1998), *review denied*, 225 Wis. 2d 490, 594 N.W.2d 384 (1999), we concluded that "[t]he correct test under Wisconsin law [in applying deference to the Commission's decision] is whether [the Commission] has experience in interpreting a particular statutory scheme, not whether it has ruled on precise, or even substantially similar, facts before." *Id.* at 733. Thus, although the facts here differ from those found in other cases dealing with the same issues, here we accord the Commission great weight deference because it has frequently been called upon to interpret the statutory scheme found in WIS. STAT. § 102.42(1).

¶ 13.   Having determined that the great weight standard applies here, the "agency's interpretation must then merely be reasonable for it to be sustained." *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 661, 539 N.W.2d 98 (1995).

¶ 14.   Honthaners first argues that the Commission erred in its decision because WIS. STAT. § 102.42(1) directs that a claimant is allowed compensation only for medical treatment that is reasonably required and

necessary. It asserts that a finding that Stanislowski was "overdiagnosed and over-treated" is tantamount to a finding that Stanislowski's medical treatment was unreasonable and unnecessary and, therefore, an award of benefits runs contrary to the statute's mandate prohibiting recovery for unreasonable and unnecessary medical treatment. Section 102.42(1), in relevant part, provides:

> **(1)** TREATMENT OF EMPLOYE. The employer shall supply such medical . . . treatment . . . as may be *reasonably required* to cure and relieve from the effects of the injury . . . and in case of the employer's neglect or refusal seasonably to do so, or in emergency until it is practicable for the employe to give notice of injury, the employer shall be liable for the *reasonable expense* incurred by or on behalf of the employe in providing such treatment. . . . Where the employer has knowledge of the injury and the necessity for treatment, the employer's failure to tender the necessary treatment . . . constitutes such neglect or refusal. . . . The obligation to furnish such treatment . . . shall continue as required to prevent further deterioration in the condition of the employe or to maintain the existing status of such condition whether or not healing is completed.

(Emphases added.)

■

¶ 15.   We agree that the statute ordinarily permits compensation only when medical treatment and expenses are reasonably required and necessary. However, *Spencer* creates an exception to the general rule. In *Spencer*, the supreme court allowed recovery for medical treatment and expenses that were incurred when the injured employee followed what, in hindsight, appeared to be erroneous medical advice. *See*

*Spencer*, 55 Wis. 2d at 530–32. *Spencer* teaches that as long as the claimant engaged in the unnecessary and unreasonable treatment in good faith, the employer is responsible for payment. *See id.* at 532. Thus, we must look at the facts to see if *Spencer* applies.

¶ 16.  The pertinent portion of the Commission's decision reads:

> Given the entire record, the commission finds it credible that the applicant continued to receive medical treatment from her physicians in good faith. The commission further finds that the applicant believes herself to be permanently disabled, when in fact Dr. McCabe credibly opined that her epicondylitis and reflex sympathetic dystrophy have resolved without any permanency. In accordance with *Spencer* the medical treatment she received and temporary disability she incurred up to Dr. Bogunovic's assessment of a healing plateau on March 26, 1996, is compensable regardless of its reasonableness or necessity. Therefore, the applicant is entitled to additional temporary total disability from February 4, 1995 through March 26, 1996, a period of exactly 64 weeks at the applicable rate of $288 per week, for a total of $18,432.

The Commission was presented with conflicting evidence. Although the ALJ determined that Stanislowski was not credible, the Commission came to the opposite conclusion. The Commission also discounted the impact of the surveillance videotape. The Commission noted that Dr. Bogunovic refused to change his medical opinion concerning Stanislowski's injury after viewing the videotape, suggesting that Dr. Bogunovic believed the tape validated, in some measure, Stanislowski's medical complaints. This conclusion is further supported by the Commission's finding that "the videotape

evidence showed the applicant did favor her right arm, albeit moderately." While evidence exists that Stanislowski might have been a malingerer, as suggested by Dr. McCabe, and an argument can be made that Stanislowski's complaints of limited range of motion in her arm were blunted by the videotape, these were not the Commission's findings.

¶ 17. Further, the Commission found that Stanislowski "had been overdiagnosed and over-treated for her right elbow problem" and that Stanislowski's recovery was delayed because "the applicant believe[d] herself to be permanently disabled." Stanislowski was treated for over two years, yet the Commission found that she had no permanent disability. Instead, the Commission found that her lengthy treatment was because she believed herself to be permanently disabled and, as a result, that she continued her treatment in good faith. While the inferences from these findings suggest that some of Stanislowski's treatment and expenses were unnecessary and possibly unreasonable, we must accept the Commission's findings; it is not our role to weigh the evidence or pass upon the credibility of witnesses. *See Langhus v. LIRC*, 206 Wis. 2d 494, 501, 557 N.W.2d 450 (Ct. App. 1996); WIS. STAT. § 102.23(6).

¶ 18. Having ascertained what the Commission found, we next address whether these facts fall within the ambit of *Spencer*. We are satisfied that the Commission properly concluded that *Spencer* was controlling.

¶ 19. In *Spencer*, Henry Spencer, the claimant, suffered a knee injury while working. *See Spencer*, 55 Wis. 2d at 526–27. No dispute arose over whether Spencer's injury was compensable under the Worker's Compensation Act. Rather, the dispute arose over the

conflicting medical opinions given to Spencer as to the best course of treatment. Dr. Braun, the first orthopedic surgeon to see Spencer, advised him that his injury required his knee cap to be removed. *See id.* at 527. Spencer agreed and Dr. Braun performed this operation. Following surgery, the doctor evaluated Spencer as suffering from "permanent disability equivalent to 15 percent at the knee." *Id.* Dr. Braun advised Spencer that he was free to go back to work and needed no further treatment. Spencer, however, continued to have pain, and he consulted with Dr. Miller, another orthopedic surgeon, who recommended a procedure called an "arthrodesis." *See id.* Again, Spencer agreed to the surgery and, after the arthrodesis was performed, Dr. Miller concluded that Spencer now suffered from a 40 per cent permanent partial disability. *See id.* When Spencer's employer objected to Dr. Miller's findings, a hearing was held in which the Department of Industry, Labor and Human Relations found that Spencer suffered from only a fifteen percent permanent partial disability and that Spencer was not entitled to any medical expenses associated with the arthrodesis because it was neither reasonable nor necessary.[3] *See id.* Spencer appealed to the circuit court. The circuit court set aside the Department's findings and remanded the matter for implementation of its determinations. *See id.* at 527–28. The Department, the employer and its insurer then appealed. In affirming the circuit court's remand, the supreme court explained:

[3] At the time of Spencer's hearing, the Department of Industry, Labor, and Human Relations oversaw the award of worker's compensation benefits.

As we see it, the conflict here is not with the amount of disability ultimately resulting, but whether the judgment of one or the other doctor was correct or incorrect with respect to the necessity of the arthrodesis. Assuming Dr. Braun was correct, is Spencer to be faulted because he chose to follow erroneous medical advice? We do not think so, as long as he did so in good faith. There is no evidence to show that in accepting arthrodesis Spencer did so other than in good faith. The employer is responsible for the consequences not only of the injury, but the treatment. Respondent now has a stiff knee resulting from the original injury.

*Id.* at 532 (footnote omitted).

¶ 20. Honthaners disputes the application of *Spencer* and contends that the *City of Wauwatosa* case controls this case. The claimant in *City of Wauwatosa* was a police officer who slipped off a curb, fell, and injured his left hip. *See City of Wauwatosa*, 110 Wis. 2d at 299. He received medical treatment and returned to work. Several weeks later, he stopped working because of the pain and was referred to Dr. Hickey. Dr. Hickey claimed that the officer's injury was the result of a congenital condition which had been asymptomatic until the fall. *See id.* Dr. Hickey then performed surgery on the officer. Later, Dr. Collopy examined the officer at the request of the city and its insurer. He found that the accident did not aggravate the existing congenital condition; instead, it merely "brought the condition to the attention of the surgeon." *Id.* After considering the conflict between the medical experts as to the cause of the claimant's injury, the hearing examiner determined that the officer's work-related injury did not require surgery and denied him benefits related to the surgery. *See id.* at 299–300. The Commission disagreed, finding that the officer's fall aggravated the

preexisting congenital condition, entitling the officer to additional benefits. *See id.* at 300. The circuit court upheld the Commission, principally relying on *Spencer* in reaching its decision. *See id.* The court of appeals reversed, opining:

> In *Spencer*, the Wisconsin Supreme Court held that, where an employee, in good faith, accepts the recommendation of treatment of one doctor, with whom another doctor disagrees, the commission cannot disregard the consequences of the treatment because it finds the treatment either unnecessary or unreasonable. In *Spencer*, it was undisputed that the injury was a compensable industrial injury. Here, however, there was a dispute in the medical testimony whether [the officer's] condition for which surgery was performed was even related to the compensable industrial injury. The hearing examiner found that the compensable industrial injury did not necessitate surgery. We conclude that the *Spencer* rationale applies only to cases involving treatment for an undisputed compensable industrial injury. It thus does not apply to the facts of this case.

*Id.* at 300–01 (citations omitted).

¶ 21.  The cases reveal one important factual difference. In *City of Wauwatosa*, the parties disputed the actual cause of the injury, with the court of appeals adopting the hearing examiner's finding that the surgery was not the result of the work-related injury—it was required by the preexisting congenital condition. In *Spencer*, the parties disputed medical treatment, not cause. Here, the Commission found that Stanislowski suffered an undisputed compensable injury; as in *Spencer*, there is no dispute that she had a work-related injury. In *Spencer*, the court permitted compensation, even though the treatment was unnecessary

and unreasonable, because the claimant obtained treatment in good faith. In the present case, the Commission found that Stanislowski, acting in good faith, obtained treatment after having been "overdiagnosed and over-treated." Thus, the Commission correctly observed that the facts of this case fall squarely within the *Spencer* holding.

¶ 22.   As in *Spencer,* here we have two conflicting medical opinions concerning a claimant's injury. Dr. Bogunovic believed Stanislowski suffered a permanent injury and needed prolonged treatment. On the other hand, Dr. McCabe felt the injury had healed and that Stanislowski was exaggerating her medical condition. Although, admittedly, Stanislowski's credibility played a large part in Dr. McCabe's diagnosis and treatment, the pertinent issues here and in *Spencer* are identical. Both cases involve no dispute that the claimants suffered a compensable injury. Both deal with differing medical opinions on diagnosis and treatment. Both cases have a claimant who continued the unnecessary treatment in good faith. Thus, we conclude the Commission properly relied on *Spencer* and Stanislowski is entitled to additional benefits.

¶ 23.   As noted, Honthaners alternatively argues that if *Spencer* applies, it is no longer good law because amendments to the law have overruled *Spencer.* At the time of the *Spencer* decision, the claimant was required to pick a doctor from an employer-approved panel of doctors. *See* WIS. STAT. § 102.42(2) (1965). Honthaners argues that an amendment abolishing the use of a panel of employer-named physicians overruled *Spencer. See* Laws of 1977, ch. 195, §§ 24–28, 45. We disagree.

¶ 24.    Our review of the legislative history reveals nothing that would support Honthaners' contention that the legislature overruled *Spencer* by passing the amendment. It is a well-settled principle of statutory construction that the courts will not interpret a statute in a manner that will abrogate the prevailing case law unless such intent is clear from the language of the statute. *See State v. Gomaz*, 141 Wis. 2d 302, 320 n.11, 414 N.W.2d 626 (1987). No intent to abrogate *Spencer* is apparent from the statutory language. Moreover, the Department itself interpreted this amendment as only changing the requirement that a claimant choose from a panel of employer-approved doctors. *See* BIENNIAL WORKER'S COMPENSATION ACT pamphlet N47 (1978). Such an annotation is entitled to consideration in ascertaining legislative intent. *See Lisney v. LIRC*, 171 Wis. 2d 499, 513, 493 N.W.2d 14 (1992).

¶ 25.    Further, we note that in *Holdman v. Smith Lab., Inc.*, 151 Wis. 2d 813, 447 N.W.2d 69 (Ct. App. 1989), we cited *Spencer* for the rule that "treatment must be undertaken in good faith." *Holdman*, 151 Wis. 2d at 817. In citing *Spencer*, we implicitly acknowledged that it remained good law. Thus, *Spencer* has not been overturned.

¶ 26.    In sum, we have accepted the Commission's findings and, after applying them, we are satisfied that *Spencer* controls the outcome of this case. In affirming the Commission's decision, we are mindful that for over sixty years, appellate decisions have determined that the Worker's Compensation Act is to be liberally construed to support compensation. *See Sentinel News Co. v. Industrial Comm'n*, 224 Wis. 355, 360, 271 N.W.2d 413 (1937). The Commission's decision here is in keep-

251

ing with this policy determination. The Commission's decision is affirmed.

*By the Court.*—Order affirmed.

¶ 27.   FINE, J. *(dissenting). Spencer v. DILHR*, 55 Wis. 2d 525, 531–532, 200 N.W.2d 611, 614–615 (1972), held that when a worker with a work-related injury accepts treatment for that injury in good faith, the employer is responsible for the costs of the treatment as well as any aggravation to the injury that results in either a higher level or longer period of disability even though in retrospect that treatment was neither reasonable nor necessary. *Spencer* applies, however, *only* where the treatment was "for an undisputed compensable" work-related injury. *City of Wauwatosa v. LIRC*, 110 Wis. 2d 298, 301, 328 N.W.2d 882, 884 (Ct. App. 1982). Here, Hothnaners Restaurants, Inc., conceded only *part* of Dawn Marie Stanislowski's claim that she suffered a work-related injury—that is, her injuries that antedated February 4, 1995. Contrary to what the majority says, Hothnaners Restaurants *did and does* dispute that Stanislowski had *any* work-related injury after that date. Thus, although *Spencer* would apply to make Hothnaners Restaurants liable for the expense and consequences of treatment undertaken in good faith for the pre-February injury even though the treatment might have been neither reasonable nor necessary, that is not the issue here because Hothnaners Restaurants does not assert that Stanislowski's pre-February 4, 1995, treatment was either unreasonable or unnecessary. It *does* argue, however, that it is not responsible for the expense or consequences of unnecessary and unreasonable treatment dated to any post-February 4 work-related injury

because Hothnaners disputes that Stanislowski has *any* post-February 4 work-related injury. I agree, and, accordingly, respectfully dissent.

¶ 28. The administrative law judge in this case found that Stanislowski did not have any work-related injury after February 4, 1995. ("I find [Stanislowski] reached a healing plateau as of February 4, 1995 (exclusive) and is not entitled to further compensation or medical treatment thereafter." Crediting medical opinions of Dr. Robert McCabe and Dr. William Dzwierzynski.). The Labor and Industry Review Commission reversed. In the crux of its decision, the Commission wrote:

> In consultation with the commission, the administrative law judge indicated that he did not find the applicant to have been a credible witness. He reiterated his findings that the videotape evidence, as well as the lack of objective findings in the x-ray, CT scan, and EMG results, led him to accept the medical opinions of Mr. McCabe and Dr. Dzwierzynski. The commission was *also* persuaded that the applicant has been over-diagnosed and over-treated for her right elbow problem; however, even Dr. McCabe acknowledged that [Stanislowski] originally sustained a right epicondylitis, and that she may have had a Stage I reflex sympathetic dystrophy.

(Emphasis added.) The Commission further found that Stanislowski received her treatment in good faith and that:

> [Stanislowski] believes herself to be permanently disabled, when in fact Dr. McCabe credibly opined that her epicondylitis and reflex sympathetic dystrophy have resolved without any permanency. In accordance with *Spencer v. ILHR*

253

*Department*, 55 Wis. 2d 525, 532, 200 N.W.2d 611 (1972), the medical treatment she received and temporary disability she incurred up to Dr. Bogunovic's assessment of a healing plateau on March 26, 1996, is compensable regardless of its reasonableness or necessity.

¶ 29.   In my view, what the commission has done, and what the majority has sanctioned, is to apply *Spencer* not to situations to which *City of Wauwatosa* recognized *Spencer* was limited—namely, to cases involving treatment for "an undisputed compensable" work-related injury—but, rather, to *resolve* a dispute as to *whether* there was, in fact, a work-related injury. I would reverse.