¶ 1.
DANIEL KELLY, J.
Trade L. Flug suffered from two medical conditions — a soft-tissue strain, and a degenerative disc disease. The first was work-related (and has since resolved), the second is not. She underwent surgery in the belief it was necessary to treat her work-related soft-tissue strain. In actuality, it was treating the unrelated degenerative disc disease. The procedure left her with a permanent partial disability. Ms. Flug tells us Wal-Mart (her employer) must compensate her for this permanent partial disability because she believed, in good-faith, that the disability-causing surgery was necessary to treat her work-related condition. We review the decision of the Labor and Industry Review Commission (the "Commission") denying Ms. Flug's claim for permanent partial disability benefits.
I. BACKGROUND
A. Ms. Flug's Injury and Surgery
f 2. Ms. Flug worked as a store supervisor at the Chippewa Falls Wal-Mart. In February of 2013 she was using a 25-ounce price scanner in the store's shoe department. After scanning an item above her head, she felt pain in her neck and right arm as she lowered the scanner. Ms. Flug sought medical treatment from *574 Dr. Sabina Morissette. Dr. Morissette diagnosed Ms. Flug with a "right arm and shoulder strain with possible relation to the cervical spine itself."
¶ 3. Ms. Flug was referred to Dr. Andrew Floren, an occupational medicine specialist, with whom she met the following month. Dr. Floren's notes state that on the date of her injury Ms. Flug "developed a severe sudden pain in her right upper back area. This pain went down the posterior shoulder and arm to the wrists." At the time of the visit, Ms. Flug stated that her symptoms were "slowly resolving," but that she had an "aching burning pain in her upper back" that "radiat[ed] into the posterior right shoulder and down the arm just a bit." Dr. Floren also noted that a cervical spine x-ray showed "mild degenerative changes," but he drew no connection between that condition and her work injury. He concluded that Ms. Flug had right upper back and shoulder pain with no sign of cervical involvement.
¶ 4. Ms. Flug's condition improved in some ways over the next few months, but not in others, so Dr. Floren referred her to Dr. Eduardo Perez, a neurosurgeon. Dr. Perez recommended an anterior cervical discectomy with fusion/fixation at the C5-C6 and C6-C7 levels. Ms. Flug had the surgery on June 4, 2013. A month later, she met with Dr. Perez and reported that she was "doing excellent" and was feeling "almost 100 [percent]." Dr. Floren released Ms. Flug back to work on July 17, 2013, with a lifting restriction that was eventually eliminated. Dr. Floren declared that Ms. Flug reached a healing plateau by November of 2013, and assessed her (at that time) as having a limited permanent partial disability.
*575 B. Ms. Flug's Application for Benefits
¶ 5. Wal-Mart agreed that Ms. Flug had suffered a work-related injury, and its worker's compensation insurance carrier paid medical expenses up to May 9, 2013, and disability benefits up to June 22, 2013. But because the insurance carrier did not agree the degenerative disc disease was attributable to Ms. Flug's work injury, it refused further compensation for medical expenses or disability benefits.
f 6. Ms. Flug filed her worker's compensation claim with the Wisconsin Department of Workforce Development on August 16, 2013. She sought compensation from Wal-Mart for continuing medical expenses, additional temporary disability benefits through August 8, 2013, as well as benefits for a 20 percent permanent partial disability consequent to her back surgery.
¶ 7. Wal-Mart asked Dr. Morris Soriano to perform an Independent Medical Examination (IME) of Ms. Flug's injury. In a report submitted in February of 2014, Dr. Soriano said that Ms. Flug's records contained evidence of two unrelated medical issues. He diagnosed Ms. Flug's condition as a "post cervical strain" (the work-related injury), and "preexisting mild degenerative disc disease C6-7 and C5-6."
¶ 8. Dr. Soriano opined that the only injury Ms. Flug suffered from the February 14, 2013, work-related incident was a "soft tissue cervical and shoulder strain." He said this condition "reached an end of healing within a four to six-week period," long before Ms. Flug underwent her back surgery. Because that was a reasonable amount of time within which to recover from such a strain, Dr. Soriano said it would be *576 proper to conclude that Ms. Flug suffered temporary disability during that period.
¶ 9. The disc degeneration, however, was an entirely different matter. Dr. Soriano said this was a pre-existing condition and there was never any anatomical or medical relationship between it and Ms. Flug's soft-tissue strain. In fact, he said "[i]t is not probable or even possible that the accident of February 14, 2013, [caused Ms. Flug's] disc degeneration." Considering the nature of the work Ms. Flug was performing at the time of her injury, Dr. Soriano also said "[i]t is not probable or even possible that reaching up with a 25-ounce scanner over a period of time" could have "cause[d] any disability by precipitating, aggravating or accelerating the preexisting condition." He also noted that Dr. Floren had offered no objective evidence of any cervical disability related to the accident. He concluded, therefore, that the surgery was not "reasonable, necessary or related" to Ms. Flug's work injury.
C. Review of Ms. Flug's Claim
¶ 10. On April 1, 2014, an Administrative Law Judge held a hearing on Ms. Flug's claims. Dr. Floren submitted a report and addendum stating that although Ms. Flug's work activities had not caused her degenerative condition, it was "medically probable" that they precipitated, aggravated, or accelerated that preexisting condition beyond its normal progression. Dr. Floren found the surgery and all medical treatment received since February 14, 2013, reasonable and necessary to treat the consequences of Ms. Flug's work-related injury.
¶ 11. Dr. Soriano also submitted a report. He said Ms. Flug suffered from "multilevel moderate degenerative disc disease," though the condition wasn't *577 aggravated or exacerbated by her work activity on the date of injury. While Dr. Soriano said that Ms. Flug's medical treatment prior to June 4, 2013 was reasonable and necessary to treat her soft-tissue strain, the surgery performed was "unrelated to the work incident or work exposure." Dr. Soriano also said "[i]t is not physically possible that scanning a product on a shelf could have aggravated or worsened two levels of a previously arthritic condition at C5-C6 and C6-C7 to the point where it became symptomatic," and that the surgery "clearly ha[d] no relationship to any docu-mentable, repetitive, objective neurological findings."
f 12. The ALJ[1] acknowledged that Ms. Flug suffered an injury at work, but said there was a "legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by [Wal-Mart]." Because the ALJ concluded Ms. Flug had already received all compensation due to her prior to the surgery, he dismissed the claim. Ms. Flug appealed the ALJ's determination, following which the Commission adopted the ALJ's factual findings and order as its own. The Commission affirmed the ALJ's decision stating specifically that Ms. Flug was not entitled to permanent partial disability benefits because the ALJ had expressed a "legitimate doubt as to whether [Ms. Flug] suffered any work injury."
¶ 13. Ms. Flug sought review of the Commission's decision in the Chippewa County circuit court. There, the Commission recognized and admitted it had mistakenly concluded the ALJ had found no work injury at all. It argued the court should nonetheless affirm the Commission's decision because Ms. Flug's surgery was unrelated to her compensable injury. The *578 circuit court[2] assumed the existence of Ms. Flug's workplace injury, but concluded the Commission/ALJ had a sufficient factual basis to deny the claim for benefits, and so affirmed. Ms. Flug appealed.
¶ 14. In an unpublished opinion, the court of appeals reversed the circuit court.[3] Its analysis focused on whether the disability-creating treatment must be undertaken to treat a compensable injury to qualify the employee for benefits. Based on its reading of Wis. Stat. § 102.42(lm) (2013-14),[4] the court of appeals concluded no such relationship between injury and treatment was required. Instead, it said the employee only need have a good faith belief that the treatment was so related. The court remanded the matter to the Commission to inquire into Ms. Flug's beliefs.
¶ 15. The Commission's timely petition for review presented this single issue: "Does Wis. Stat. § 102.42(lm) make an employer liable for disability resulting from invasive treatment, when the claimant has not established that the treatment in fact treated a compensable work injury?" We granted the petition, and now affirm the Commission's order dismissing Ms. Flug's claim for disability benefits.
II. STANDARD OF REVIEW
¶ 16. In cases involving administrative agencies we review the decision of the agency. Estate of Szleszinski v. LIRC, 2007 WI 106, ¶ 22, 304 Wis. 2d *579 258, 736 N.W.2d 111. The court has, at times, deferred to an agency's interpretation of a statute. Harnischfeger Corp. v. LIRC, 196 Wis. 2d 650, 659, 539 N.W.2d 98 (1995). But we need not address the issue of deference here because, based on its mistaken belief that Ms. Flug had suffered no compensable injury at all, the Commission did not answer the question presented for our review. Thus, as is our tradition with questions of law, we review the meaning of Wis. Stat. § 102.42(lm) de novo.[5]
1 17. The Commission's findings of fact, however, are normally beyond question: "The findings of fact made by the commission acting within its powers shall, in the absence of fraud, be conclusive." Wis. Stat. § 102.23(l)(a)l. Ms. Flug does not challenge the Commission's findings of fact here, so we accept them as presented by the Commission.
III. ANALYSIS
¶ 18. Whether Ms. Flug is entitled to compensation depends on how Wis. Stat. § 102.42(lm) applies to her pre-existing medical condition, her compensable injury, her treatment, and her resulting disability. The statute provides the following:
Liability for unnecessary treatment. If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment.
Wis. Stat. § 102.42(lm). The parties agree Ms. Flug sustained a compensable injury while working for *580 Wal-Mart, she subsequently underwent an invasive treatment, and she suffered a permanent partial disability as a direct result of the treatment. They disagree on what it means for a treatment to be "generally medically acceptable, but. . . unnecessary."
A. The Terms of the Argument
¶ 19. The disagreement centers on the necessary relationship, or lack thereof, between the treatment and the employee's compensable injury. The Commission says an invasive treatment is "unnecessary" within the meaning of this statute if its purpose is to treat the compensable injury, but it fails to cure the injury, or relieve its effects. If an employee undergoes such a treatment in good faith, the Commission says, this statute makes the employer liable for benefits when the treatment causes a disability. The court of appeals, on the other hand, concluded it does not matter whether the invasive procedure was actually directed at a compensable injury, so long as the employee had a good faith belief that it was. Flug, No. 2015AP1989, ¶ 32 ("[W]e conclude that, to establish good faith under Wis. Stat. § 102.42(lm), an employee must show that he or she reasonably believed the proposed treatment was both necessary and the result of a compensable injury."). Thus, the court of appeals held that this statute can make an employer liable for benefits even when the injury and its treatment had nothing to do with the workplace.
f 20. Contrary to what one might expect, Ms. Flug's argument neither directly refutes the Commission's position, nor champions the court of appeals' *581 analysis.[6] Whereas both the Commission and the court of appeals base their competing analyses on the shared understanding that Ms. Flug's surgery had nothing to do with her compensable injury, Ms. Flug does not.[7] Instead, she characterizes her dispute with the Commission as a disagreement over the extent of benefits available for the treatment of a compensable injury: "The key to the statute is whether the injured employee undergoes surgery for a compensable injury in good faith — here, reasonably believing, based on her doctors' advice, that it was necessary to cure and relieve Flug from the continuing symptoms that began with her work injury." She says the relevant medical testimony establishes that "[t]he surgery, undertaken for the injury, was 'reasonable and necessary to cure and relieve' [her] from the effects of cervical disability which began at work."
¶ 21. Out of the several cases Ms. Flug addressed in her argument, there are two that provide particularly helpful insight on the nature of her argument. The first is Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972). Indeed, Ms. Flug dedicated the *582 bulk of her argument to the proposition that Wis. Stat. § 102.42(lm) is, in the main, a codification of Spencer, and that we can resolve this case by reprising that analysis here.[8] Spencer, as Ms. Flug acknowledges, concerned an employer's liability for the harmful side-effects of a procedure that unquestionably treated a compensable injury. There, we said "[t]he employer is responsible for the consequences not only of the injury, but the treatment" and we observed the employer was liable because Mr. Spencer "now has a stiff knee resulting from the original injury." Id. at 532.[9] Ms. Flug says § 102.42(lm) maintains this understanding, and that "[e]mployers remain liable for the good faith treatment an injured employee receives for a compensable injury."
f 22. The second case providing insight on Ms. Flug's argument is City of Wauwatosa v. LIRC, 110 Wis. 2d 298, 328 N.W.2d 882 (Ct. App. 1982). Her treatment of this case confirms that she believes her dispute with the Commission is about the extent of available benefits consequent upon treatment of a compensable injury, not about whether benefits are *583 available when there is no relationship between the disability-causing treatment and her compensable injury. The City of Wauwatosa court denied benefits because there was no connection between the employee's treatment and his compensable injury. The court concluded that "the Spencer rationale applies only to cases involving treatment for an undisputed compensable industrial injury." Id. at 301. In a particularly revealing passage in Ms. Flug's brief, she said this case "is not helpful in our analysis because it doesn't address the extent of treatment undertaken, in good faith, for a compensable injury."
f 23. Thus, Ms. Flug's argument assumes her surgery was, in fact, "for" the compensable injury, and that the real controversy is over how much treatment was necessary to relieve her of the symptoms caused by that injury.[10] Ms. Flug's assumption, however, is not warranted. The ALJ and the Commission found — as a factual matter — that the surgery didn't treat Ms. Flug's compensable injury.[11] Thus, because the Commission eliminated the factual predicate for Ms. Flug's argument, we would not be able to engage it unless we first rejected the Commission's findings on this point. Ms. Flug does not assert the findings of fact are the result of fraud, or that the Commission acted outside of *584 its powers, so the findings are conclusive.[12] And that puts Ms. Flug's argument beyond our reach.
¶ 24. Justice Ann Walsh Bradley experienced some difficulty with this. She says there is a "procedural morass" in this case that stymies her ability to assess the ALJ and Commission's factual findings. Justice Ann Walsh Bradley's dissent, f ¶ 107-10. The relevant facts, however, are just not that complicated. For purposes of this analysis, we must know whether the ALJ and the Commission believed the surgery addressed Ms. Flug's compensable injury, or instead her pre-existing condition. The ALJ found no injury beyond that for which Wal-Mart had already compensated Ms. Flug. He said there was "a legitimate doubt as to the compensability of the claim as a traumatic injury beyond that already conceded and paid by the *585 respondents." Flug v. Wal-Mart Assocs. Inc., No.2013-006010, at 4 (LIRC Apr. 30, 2014) (Sass, ALJ). The ALJ also rejected the argument that her workplace activity caused the injury the surgery treated. Id. ("While Dr. Floren also reported the appreciable workplace exposure was causative, this was not developed at hearing particularly given the inconsistency in history of injury . . . ."). There were only two medical conditions at issue, and if the workplace activity did not cause the injury the surgery treated, then by process of elimination we can confidently conclude that the surgery treated Ms. Flug's preexisting condition. This is also the Commission's determination: "Based on its review, the commission agrees with the decision of the ALJ, and it adopts the findings and order in that decision as its own." Flug v. Wal-Mart Assocs., Inc., WDC No. 201300610 (LIRC Feb. 23, 2015). If there is a procedural morass here, it's not bad enough to keep us from doing our duty.[13]
B. What it Means to be "Unnecessary"
¶ 25. Still, we must determine what it means for a treatment to be "unnecessary" within the meaning of *586 Wis. Stat. § 102.42(lm) so that we can determine whether the Commission properly denied Ms. Flug's application for benefits.[14] We begin with the statutory language. State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.1 " (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 232, 612 N.W.2d 659)). We understand the language "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id., ¶ 46. When this process produces a plain, clear meaning, we go no further. Id.
¶ 26. The statute we are considering is part of Wisconsin's comprehensive Worker's Compensation program. This is "a legislatively enacted compromise designed to bring employers and employees together in a mutually beneficial scheme of guaranteeing benefits in the event of work-related injury [or] disease." Nelson v. Rothering, 174 Wis. 2d 296, 302, 496 N.W.2d 87 (1993). It "provides a broadly applicable method for compensating persons who suffer work-related physical and mental injuries." Byers v. LIRC, 208 Wis. 2d 388, 395, 561 N.W.2d 678 (1997). By relieving employers from tort liability, the Worker's Compensation program "mak[es] employers strictly liable for injuries encompassed within the Act, but limit[s] the liability to compensation established by the statute." Id. These *587 limits are important because the program is not supposed to be "a blanket insurance policy to provide benefits for disabilities which may become manifest while on the job but are in no way caused by or related to the employment." Lewellyn v. Indus. Comm'n, 38 Wis. 2d 43, 61, 155 N.W.2d 678 (1968). It serves an important, but limited, purpose: "It was never intended to make the Workmen's Compensation Law an accident insurance or health insurance measure." Id. (quoting Newman v. Indus. Comm'n, 203 Wis. 358, 360, 234 N.W. 495 (1931)).
¶ 27. Compensation under the Worker's Compensation program is available only when the employee satisfies the statutorily-defined eligibility requirements. Broadly speaking, an employee is eligible for compensation under this program if he sustains an injury that arises out of his employment. See Wis. Stat. § 102.03(1). Upon the occurrence of such an injury, the employer is responsible for supplying "such medical, surgical, chiropractic, psychological, podiatric, dental, and hospital treatment... as may be reasonably required to cure and relieve from the effects of the injury . . . ." Wis. Stat. § 102.42(1). An employer must also pay the employee benefits "if the injury causes disability." Wis. Stat. § 102.43. Thus, in the general scheme of the program, medical expenses and disability benefits are payable only when they are attributable to a qualifying injury.
f 28. This context informs our inquiry into the meaning of Wis. Stat. § 102.42(lm), the nucleus of which says that " [i] f an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability *588 indemnity for all disability incurred as a result of that treatment." As we described above, we must discern the statutory relationship between Ms. Flug's preexisting condition, her work-related injury, her surgery, and her partial permanent disability.
f 29. There are two logical ways of reading a statutory provision like Wis. Stat. § 102.42(lm). One can read it as a sentence (as it was written), paying attention to rules of grammar, syntax, and diction to tease out its meaning. Or one might dice it up into its constituent parts and treat each resulting element as an independent requirement that neither qualifies nor is qualified by the others. The court of appeals favored the second approach. It said Ms. Flug is entitled to disability benefits if she meets five distinct elements, which it defined as follows:
(1) the employee sustained a compensable injury;
(2) he or she undertook invasive medical treatment;
(3) the treatment was undertaken in good faith;
(4) the treatment was generally medically acceptable, but unnecessary; and
(5) the employee incurred a disability as a result of the treatment.
Flug, No. 2015AP1989, ¶ 30. This, of course, is not what the legislature wrote. It is simply how the court of appeals chose to frame its analysis. While this is a legitimate method of approaching statutory language, it does present peculiar risks. When translating a sentence into discrete elements, it is easy to lose critical information by neglecting to propagate the proper relationship between the parts of the sentence into the list. And that is what happened here.
*589 f 30. Careful examination of the elements above reveal that the court of appeals maintained the relationship between the "treatment" and other parts of the sentence in elements three through five. But in the first two elements, the court of appeals set up "com-pensable injury" and "treatment" as having nothing to do with each other. This relegated the "compensable injury" provision to a mere gatekeeper role that, once satisfied, could be ignored for the balance of the analysis. Consequently, the court of appeals' translation was outcome-determinative.[15] That is to say, the court inadvertently baked the outcome into the structure it created for the analysis — it assumed there need be no relationship between the compensable injury and the treatment. So when the Commission asserted a necessary link between the two, the court of appeals criticized the argument as "reading] an additional causation requirement into the statute." It did not say why the Commission's posited relationship between the treatment and the compensable injury was inap-posite, as a textual matter, other than by referring to how it had diced the statutory language. It is true that the Commission's asserted relationship finds no reflection in the court of appeals' analytical construct, but that is a fault only if the court of appeals accurately translated the statute into a list of elements. That is the question we must now answer.
¶ 31. Instead of separating the statute into separate elements, we will analyze the sentence as written, using our standard toolbox to help us derive its meaning. The court of appeals properly recognized the centrality of "treatment" to the meaning of the statute —the term appears in four of the five elements it culled *590 from the statutory language. So some attention to the dictional provenance of this term will help us determine its proper place and function in the statute. "Treatment" is the nominal form of the verb "to treat." "Treat," of course, is a transitive verb, which means it requires a direct object on which to act. That is, one does not simply "treat," one treats something — a person, a condition, a disease, etc. Nominalizing the verb doesn't remove its transitive property: "Treatment" is the "[administration or application of remedies to a patient or for a disease or an injury; medicinal or surgical management; therapy."[16] Regardless of whether the word takes its nominal or verbal form, it must still be understood as operating on something.
¶ 32. With that understanding of this central term, we can now let the rules of grammar direct our understanding of Wis. Stat. § 102.42(lm). Our first goal is discovering the objective of the "treatment." We begin with the part of the statute that says "[i]f an employee who has sustained a compensable injury undertakes . . . invasive treatment. . . ." Without considering more of the statute, "treatment" could operate on one of two possible objects — the employee, or the compensable injury. It is plausible, both textually and logically, that the employee could be the object of the term "treatment." The phrase "who has sustained a compensable injury" could be understood as simply identifying the employee who undertook the treatment, leaving "employee" as the only possible object of the "treatment."[17]
*591 ¶ 33. There are, however, more qualifications to the term "treatment," and they prevent the employee from serving as the object. The statutory language, with the qualifiers included, says this: "If an employee who has sustained a compensable injury undertakes . . . invasive treatment that is generally medically acceptable, but that is unnecessary. . . ." The requirement that the treatment be "generally medically acceptable," on its own, could direct us with equal ease to either the employee or the compensable injury, and so it provides no help in identifying the object on which it is to operate; we will return to it later. The phrase "but that is unnecessary," on the other hand, tells us that the object of the treatment must be the compensable injury.
¶ 34. Ms. Flug tells us she fits within the statute because the treatment — her surgery — was unnecessary. But unnecessary to what? If the object of the treatment is the employee (as opposed to the compensable injury), then it wasn't unnecessary at all. In fact, it was quite the opposite. Ms. Flug herself reported that the treatment brought her back to nearly 100 percent. Neither Ms. Flug nor the court of appeals has explained how a treatment can be that effective while simultaneously being unnecessary. If, on the other hand, the statute makes the object of the treatment the compensable injury, then one must determine whether the treatment was directed — as a factual matter — at that particular injury. Either way, Ms. Flug's claim must end here. If the object of "treatment" is the employee, Ms. Flug cannot succeed because the treatment was clearly necessary — it cured her condition. If, instead, the object of "treatment" is the compensable *592 injury, she can proceed no further because the Commission has already found (and we must accept) that the object of Ms. Flug's surgery was not her compensable injury.[18]
¶ 35. The only way to reach the court of appeals' conclusion would be to allow the object of the treatment to flicker between the employee and the com-pensable injury, depending on whether we are considering (a) what the treatment was treating, or (b) the treatment's necessity. The court of appeals' formulation would make Ms. Flug the object of "treatment" when considering what the surgery was treating, but flit to the compensable injury in assessing its necessity. Only if such grammatical instability is possible may one conclude that the treatment was treating Ms. Flug, but was unnecessary because it was not treating the compensable injury. However, there is no grammatical rule that allows the object of the treatment to flicker like that.
¶ 36. We return now to the requirement that the treatment in question be "generally medically acceptable." Because the phrases "generally medically acceptable" and "but that is unnecessary" both act as delimiters on the term "treatment," the treatment must partake of both qualities. And because we have already concluded that the proper object of "treatment" is the compensable injury, we must also conclude that *593 the treatments contemplated by the statute are those that are generally medically acceptable as a treatment of the compensable injury.
f 37. The statute has one further requirement, which we have not yet addressed — "good faith." And although it does not budge "compensable injury" from its place as the object of "treatment," it is important to a complete understanding of how the statute functions. The portion of Wis. Stat. § 102.42(lm) that describes eligibility for benefits says, in full: "If an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary. . . ." This provision exists against the backdrop of a Worker's Compensation program that requires payment of medical expenses only to the extent they are "reasonably required" to "cure and relieve from the effects of the [compensable] injury,"[19] and disability benefits only for incapacities caused by a work-related injury.[20] An unnecessary medical treatment is not "reasonably required" to treat the compensable injury. And a disability caused by a treatment is not a disability caused by an injury. It is here that § 102.42(lm) intervenes, requiring disability benefits when a treatment for a compensable injury that turns out to not be reasonably required (that is, unnecessary) causes a disability. Without this, there would be no statutory liability for such an event. So § 102.42(lm) extended the employer's statutory liability, and the "good faith" requirement acts as a limit on that extension. If the disability-creating treatment turns out not to have been necessary to treat her compensable injury, she still *594 receives disability benefits so long as she undertook the treatment in good faith. We need not explore this concept further because we have already concluded Ms. Flug's treatment does not qualify under the statute's extension of liability.[21]
C. Consistency
f 38. Ms. Flug says Wis. Stat. § 102.42(lm) codified Spencer (but for one aspect not relevant here), and all parties urge us to apply that statute consistently with cases decided before its adoption. This opinion fits neatly into our canon.
I 39. Spencer addressed itself to an employee who injured his knee while on the job; everyone agreed he was entitled to compensation. Mr. Spencer had his kneecap removed, but he continued to suffer. He sought the advice of a different doctor, who recommended an arthrodesis.[22] His original doctor disagreed, saying such a procedure would not be reasonably necessary. Nonetheless, Mr. Spencer opted for the arthrodesis, which left him with a stiff leg. The admin *595 istrative agency found the arthrodesis was not reasonably necessary, and so rejected payment of expenses related to that procedure. Spencer, 55 Wis. 2d at 527-28. The circuit court set aside the agency's decision, ruling that "where an employee, in good faith, accepts the recommendation of treatment of one doctor, with whom another doctor disagrees, the commission cannot disregard the consequences of treatment (increased period of temporary total disability, increased permanent partial disability and the expense of the arthrodesis) because they find the treatment was either unnecessary or unreasonable." Id. at 532. We agreed with the circuit court, and held that "[t]he employer is responsible for the consequences not only of the injury, but the treatment." Id. Although not explicit, our juxtaposition of "injury" and "treatment" in that sentence can lead to no conclusion but that the treatment we were considering was for the compensable injury. Because we conclude today that the "treatment" identified in Wis. Stat. § 102.42(lm) must treat the compensable injury to qualify for benefits, our holding is consistent with what we said in Spencer.
¶ 40. The court of appeals subsequently considered an injured employee's situation that closely tracks that of Ms. Flug in City of Wauwatosa v. LIRC, 110 Wis. 2d 298, 328 N.W.2d 882 (Ct. App. 1982). There, a police officer had slipped off a curb while on duty, and incurred a compensable hip injury. Id. at 299. The officer's treating doctor diagnosed him as also having a pre-existing hip condition that his work-related accident aggravated, and recommended surgery. The insurance carrier's doctor disagreed, opining that the fall "had not aggravated nor accelerated the preexisting [] condition, but merely brought the condition to the attention of the surgeon." Id. The hearing *596 examiner resolved the disputed testimony against the officer, finding no aggravation. The Commission disagreed, and so awarded benefits related to the surgery for the pre-existing, but aggravated, hip injury. Id. at 300. The circuit court affirmed, citing Spencer. The court of appeals acknowledged that the key question was whether Spencer controlled, but concluded that our holding in that case "applies only to cases involving treatment for an undisputed compensable industrial injury." Id. at 301. The court of appeals was correct, and its conclusion is reflected in our holding here.
¶ 41. Finally, we consider Honthaners Restaurants, Inc. v. LIRC, 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660. An employee suffered a compensable injury to her arm, and received disability benefits for just under six months as well as accrued medical expenses during that period. Id., ¶ 3. She subsequently sought benefits for an additional year of treatment. The Commission found that she had been "over-diagnosed and over-treated," because she continued to receive treatments long after her compensable injury had resolved. However, because she had sought the extended treatment in "good faith," the Commission said she was entitled to continued benefits. Id., ¶ 7. Agreeing with the Commission, the court of appeals said "Spencer teaches that as long as the claimant engaged in the unnecessary and unreasonable treatment in good faith, the employer is responsible for payment." Id., f 15. It distinguished Spencer and City of Wauwatosa on the basis that "[i]n Spencer, the parties disputed medical treatment, not cause." Id., 1 21. The court of appeals concluded that the Spencer rule applied because the treatment the employee received was directed at her compensable injury, even though it turned out not to have been necessary. *597 Comparing the employee's situation to Spencer, the Honthaners Restaurant court said:
Both cases involve no dispute that the claimants suffered a compensable injury. Both deal with differing medical opinions on diagnosis and treatment. Both cases have a claimant who continued the unnecessary treatment in good faith. Thus, we conclude the Commission properly relied on Spencer and [the employee] is entitled to additional benefits.
Id., ¶ 22. That conclusion is consistent with our holding today, which requires that the treatment in question was directed at the compensable injury.
* * *
¶ 42. Our opinion today tracks the language of Wis. Stat. § 102.42(lm) and is consistent with prior opinions delivered by the courts of this state. It is also consistent with the nature of Wisconsin's Worker's Compensation system. Indeed, any other conclusion would represent a sharp break with the "legislatively enacted compromise" between employers and employees for the payment of expenses and benefits consequent upon "work-related injury [or] disease." Nelson, 174 Wis. 2d at 302. And it would represent a significant step towards making the Worker's Compensation system "a blanket insurance policy to provide benefits for disabilities which may become manifest while on the job but are in no way caused by or related to the employment." Lewellyn, 38 Wis. 2d at 61. There is nothing in the text of Wis. Stat. § 102.42(lm) to suggest such a momentous change, and even if that change is warranted, we are not the proper branch of government to prescribe it. Thus, we will not adopt an understanding of this statute that would extend em *598 ployer liability to injuries and diseases that have nothing to do with the workplace.[23]
IV. CONCLUSION
¶ 43. We hold today that an employee is not eligible for benefits under Wis. Stat. § 102.42(lm) if the disability-causing treatment was directed at treating something other than the employee's compensable injury. Because Ms. Flug's surgery treated her preexisting condition, not her compensable injury, her claim must be disallowed. We reverse the court of appeals because it should have affirmed the Commission's decision.
By the Court. — The decision of the court of appeals is reversed and the case is dismissed.

 Roy L. Sass, presiding.

 The Honorable James M. Isaacson, presiding.

 Flug v. LIRC, No. 2015AP1989, unpublished slip. op. (Wis. Ct. App. June 21, 2016).

 All subsequent references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Because we affirm the Commission's decision, the question of deference is immaterial to the outcome of the case.

 The extent of Ms. Flug's assessment of the court of appeals' reasoning was to misinterpret it as rejecting a requirement that the invasive procedure "was actually necessary to treat her work injury." That is not what the court of appeals said. What it said was that there need be no relationship between the disability-causing treatment and a compensable injury: "By arguing that an employee must show his or her treatment was the result of a compensable injury, the Commission reads an additional causation requirement into the statute." Flug, No. 2015AP1989, ¶ 30.

 To the extent this sentence refers to the Commission, it is a characterization of its argument here — Justice Ann Walsh Bradley misunderstands it as referring to the Commission's decision under review. See Justice Ann Walsh Bradley's dissent, ¶ 129.

 Ms. Flug introduced her argument with the assertion that "[t]he holding in Spencer is the central focus of this case." She said Wis. Stat. § 102.42(lm) is significant only in that it limited Spencer to circumstances in which the disability-causing treatment is invasive (whereas Spencer required payment of benefits even when the procedure was non-invasive).

 There was an obvious, and direct, line of causation that started with the workplace injury and ended with the stiff knee. The "treatment" to which we referred in the Spencer v. DILHR, 55 Wis. 2d 525, 200 N.W.2d 611 (1972), quote was not just any treatment, it was treatment of the compensable injury. And it was the treatment of the compensable injury that ended in a stiff knee. This relationship is as important to our analysis of Wis. Stat. § 102.42(lm) as it was in Spencer.

 This is a continuation of the argument Ms. Flug made in the court of appeals, where she unequivocally stated she "sustained a compensable injury and. . . underwent surgery for a compensable injury." Ms. Flug maintained this position even through oral argument here. Her counsel was asked to acknowledge the surgery was not necessary to treat her compensable injury, but he elected not to concede the point.

 Although Ms. Flug's "good faith" belief about the necessity of the back surgery is important, as we discuss below, it cannot change the objective fact that the treatment had nothing to do with her compensable injury.

 Justice Ann Walsh Bradley says Ms. Flug did challenge the findings of fact here. Although Ms. Flug may have done so before the circuit court and court of appeals, she did no such thing here. Justice Bradley finds a factual challenge in Ms. Flug's argument that she acted in good faith in obtaining the surgery. See Justice Ann Walsh Bradley's dissent, ¶ 123. But that was Ms. Flug's argument about the law; it was not a challenge to the Commission's findings of fact. Ms. Flug based her argument on the assumption that the surgery treated her compensable injury. An assumption, however, is neither an argument nor a challenge. A challenge to the Commission's factual findings would involve marshalling the facts supporting her argument, juxtaposing them against the facts supporting the Commission/ALJ's findings, and then demonstrating the credible and substantial evidence does not support the Commission's decision. That effort is wholly absent from Ms. Flug's argument here.
So Justice Bradley bobbles twice. First, she confounds legal and factual challenges. And second, she promotes assumptions to arguments. We will neither distort nor re-write Ms. Flug's brief to make it say something it clearly does not.

 Justice Ann Walsh Bradley also accuses us of getting the facts wrong. See Justice Ann Walsh Bradley's dissent, ¶¶ 125-30. She disagrees, in particular, with our statement that Ms. Flug believed the surgery was treating her soft-tissue strain. She bases this assertion, apparently, on an argument she created for Ms. Flug ex nihilo — that the work injury exacerbated her pre-existing condition beyond its normal progression, and that the surgery was necessary to treat that exacerbated condition. Maybe Ms. Flug's counsel should have adopted Justice Bradley's litigation strategy. But he didn't — perhaps because the ALJ and Commission had already determined there was insufficient evidence to conclude this had occurred, and he had chosen not to challenge the factual findings before this court.

 Although we are reviewing the Commission's decision, not that of the court of appeals, we refer to the court of appeal's reasoning to assist us in determining the proper interpretation of this statute.

 As is Chief Justice Roggensack's dissent. Chief Justice Roggensack's dissent, ¶ 87.

 Treatment, The American Heritage Dictionary of The English Language (3d ed. 1992) (emphases added).

 If a treatment treats the "employee," then the object of the treatment comprises any malady from which the employee *591 might suffer. In this case, that would include Ms. Flug's non-compensable degenerative disc disease.

 Chief Justice Roggensack faults us for eliding "good faith" from this part of our analysis. Chief Justice Roggen-sack's dissent, ¶ 85. We do so because our task at this stage is to discover what the "treatment" is supposed to be treating. The employee's "good faith" in accepting the treatment provides no information useful to that inquiry. Ms. Flug's subjective beliefs cannot affect the statute's grammar, regardless of the sincerity with which they are held.

 Wis. Stat. § 102.42(1).

 Wis. Stat. § 102.43.

 In light of our holding that this statute extends liability only to treatments that are directed at a compensable injury, Chief Justice Roggensack asks this eminently reasonable question: "What then of the context in which an employee who in good faith believed that the invasive treatment she undertook would treat her compensable injury?" Perhaps employees in such circumstances ought to receive benefits, but they must direct their petition for relief to the legislature — not the court. We can only apply the law as the legislature created it. The statute, as it currently exists, extends liability based on the reality of what the treatment addresses, not the employee's belief about what it addresses.

 Arthrodesis is "[t]he stiffening of a joint by operative means." Arthrodesis, Stedman's Medical Dictionary (28th ed. 2006).

 The court of appeals, Ms. Flug, and the Chief Justice discuss whether the compensable injury must "cause" a treatment to qualify for benefits — a proposition they all reject. See, e.g., Chief Justice Roggensack's dissent, ¶¶ 85-87, 90. It is difficult to know what to do with this construct (which finds no place in the statutory language) because injuries, of course, do not "cause" treatments. They certainly need them. And they frequently won't cure without them. But if treatments are caused by anything, they are caused by those skilled in the healing arts. In any event, nothing in this opinion should be construed as requiring that a compensable injury "cause" a treatment. Our opinion is simply that a qualifying treatment is one that treats a compensable injury.