PER CURIAM.
¶ 1 The Labor and Industry Review Commission appeals from an order of the circuit court that set aside the Commission's decision-that Theresa L. Payton-Myrick was not entitled to further worker's compensation and disability payments-and remanded the matter to the Commission for further fact-finding. The Commission argues that the circuit court erred in considering Payton-Myrick's argument that her claim was governed by WIS. STAT. § 102.42(1m) (2015-16)[1] because Payton-Myrick had forfeited that argument when she failed to raise it before the Commission and only raised it in the circuit court in a reply brief. The Commission also argues that Flug v. LIRC , 2017 WI 72, 376 Wis. 2d 571, 898 N.W.2d 91, governs Myrick's § 102.42(1m) claim and requires reversal of the circuit court.
¶ 2 We conclude that the circuit court properly exercised its discretion when it declined to apply the forfeiture doctrine against Payton-Myrick, so we affirm that portion of the circuit court's order. However, we agree with the Commission that Flug controls, so we reverse the remainder of the circuit court's order.
BACKGROUND
¶ 3 Payton-Myrick has been employed by the University of Wisconsin System in a variety of support roles since 1990. Beginning in 2006, she experienced periods of neck, lower back, and leg pain that sometimes caused her to miss work. Magnetic resonance imaging (MRI) scans taken in August 2006 and December 2008 showed multi-level degenerative disc disease and arthritic changes in Payton-Myrick's spine. Her primary care physician, Dr. David Tick, reported that Payton-Myrick had a "long-established history of spinal pathology" marked by diffuse back pain and numbness in her left arm and hand, symptoms that had been present since approximately 2005.
¶ 4 On July 21, 2009, Payton-Myrick was working as an administrative assistant at the University of Wisconsin-Milwaukee. While picking up a piece of paper from under her desk, Payton-Myrick fell forward out of her office chair onto the floor. The chair flipped over and landed on Payton-Myrick, pinning her under her desk. A co-worker helped her up. Payton-Myrick reported pain in her upper and lower back, both arms, both legs, shoulder, and neck.
¶ 5 On July 22, 2009, Payton-Myrick saw Dr. Tick, who diagnosed Payton-Myrick with an acute neck and shoulder strain. Dr. Tick ordered a new MRI, which was performed on August 28, 2009. This scan again showed degenerative arthritic changes and degenerative disc disease in Payton-Myrick's spine.
¶ 6 On December 29, 2009, Payton-Myrick saw Dr. Shekar Kurpad, a neurosurgeon. Dr. Kurpad concluded that Payton-Myrick's fall did not directly cause any of her symptoms, but it did precipitate, aggravate, and accelerate her pre-existing degenerative condition beyond normal progression. Dr. Kurpad recommended two-level spinal fusion surgery.
¶ 7 On February 23, 2010, Payton-Myrick saw Dr. Michael Orth at the request of the UW System Administration. Dr. Orth diagnosed Payton-Myrick with an acute cervical and lumbar strain, superimposed on a pre-existing multi-level degenerative disc disease of the cervical and lumbar spine. He concluded that the strain caused by the work injury was a soft tissue injury with a healing time of three to four months, and that Payton-Myrick's underlying pre-existing condition did not change significantly because of the fall. Dr. Orth did not believe the surgery recommended by Dr. Kurpad was necessary, but Payton-Myrick underwent the procedure with Dr. Kurpad on March 17, 2010.
¶ 8 The fusion surgery performed by Dr. Kurpad resulted in an incomplete fusion, so a second procedure was needed. Dr. Kurpad completed the second surgery on February 16, 2011, and set permanent work restrictions for Payton-Myrick. Despite the second procedure, Payton-Myrick continued to have pain and discomfort, could not sit or stand for more than an hour at a time, had difficultly sleeping, could not lift more than ten pounds at a time, and had constant leg spasms. In other words, Payton-Myrick was arguably disabled as the result of treatment she says was necessary for her work-related injury.
¶ 9 Payton-Myrick had applied for worker's compensation benefits after her fall and received benefits through February 23, 2010, the date on which Dr. Orth evaluated her and concluded she should be healed. The UW System instructed Payton-Myrick to return to work on March 17, 2010, which she did not do because she was undergoing the first fusion procedure. After the UW System denied medical and disability benefits for Payton-Myrick's surgeries and subsequent disability, Payton-Myrick filed claims against the UW System with the Department of Workforce Development in April 2010 and December 2013.
¶ 10 The UW System retained another doctor to examine Payton-Myrick. Dr. Charles Burton concluded Payton-Myrick had suffered a "musculoligamentous sprain/strain" from her work injury, which would have aggravated her pre-existing condition but would have healed within eight to twelve weeks. He concluded that her symptoms were a manifestation of the pre-existing condition; that the work injury did not precipitate, aggravate, or accelerate that condition; and that Payton-Myrick had no permanent disability. Dr. Burton concluded that any treatment after October 22, 2009, was not related to and did not treat the work injury.
¶ 11 An administrative law judge (ALJ) conducted an evidentiary hearing on August 20, 2014. Payton-Myrick was the only witness. The ALJ concluded that Payton-Myrick had "suffered a work related injury" that "caused or aggravated [Payton-Myrick's] back condition beyond its normal progression." In reaching this conclusion, the ALJ discounted the UW System's medical experts, Drs. Orth and Burton. The ALJ additionally concluded that "the treatment, including surgery, was necessary and reasonable." Payton-Myrick was awarded, among other amounts, additional worker's compensation benefits from February 24, 2010, to June 30, 2011, and "50% functional permanent partial disability."
¶ 12 The UW System sought review from the Commission, which reversed the ALJ. While the Commission appears to have agreed that Payton-Myrick suffered a work-related injury, it concluded that the injury "did not precipitate, aggravate, and accelerate her pre-existing condition beyond its normal progression to the point of necessitating a fusion surgery or resulting in permanent disability." Rather, she had sustained a lumbar strain"from which she had reached an end of healing without permanent disability" on February 23, 2010.
¶ 13 In reaching its decision, the Commission made several factual findings. It noted that according to a report from Dr. Tick, Payton-Myrick had not complained of leg or back pain when she saw him the day after the injury, and his initial diagnosis was that of a soft tissue injury, similar to what Drs. Orth and Burton had diagnosed. The Commission stated that Dr. Kurpad had failed to account for Payton-Myrick's pre-injury symptoms of back pain and arm numbness. Additionally, the doctors were in general agreement that the MRI scans did not reveal any injury. On the August 28 scan, ordered by Dr. Tick soon after the work injury, the findings were "degenerative arthritic changes and degenerative disc disease at multiple levels" in Payton-Myrick's spine, but those findings were described by the interpreting radiologist and Dr. Tick as "essentially unchanged, or stable, compared to the findings from the previous MRI studies."
¶ 14 The Commission specifically credited the opinions of Drs. Orth and Burton over Payton-Myrick's doctors. It further stated that it had conferred with the ALJ about "demeanor impressions" and that the ALJ did not find anything in Payton-Myrick's demeanor to suggest untruthfulness. However, the Commission noted that Payton-Myrick's memory would have been freshest when she saw Dr. Tick the day after her injury, when she did not mention any leg or back pain. Additionally, the MRIs showed no injury. Thus, the Commission "did not adopt the ALJ's demeanor impressions on this point."
¶ 15 Payton-Myrick sought judicial review of the Commission's decision in the circuit court. Payton-Myrick initially represented herself for a period before retaining counsel. Counsel filed a reply brief in which Payton-Myrick claimed entitlement to disability payments, under WIS. STAT. § 102.42(1m), for the disability following the spinal surgeries because she had undertaken the treatment in good faith. The Commission objected to this argument because it had not been raised earlier. The circuit court declined to apply waiver and concluded that in this case, the dispute was "about differing medical opinions on diagnosis and treatment, not whether a compensable injury had occurred." Thus, the circuit court believed the Commission needed to determine whether Payton-Myrick underwent the surgeries in good faith and whether she was entitled to additional benefits as a result. It therefore set aside the Commission's decision and remanded the matter for further proceedings. The Commission appeals.
DISCUSSION
I. Forfeiture of WIS. STAT. § 102.42(1m) Argument
¶ 16 The Commission first asserts "that Payton-Myrick forfeited her argument that her benefits claim is controlled by" WIS. STAT. § 102.42(1m). The Commission also contends that whether a party forfeits an issue by failing to raise it before an administrative agency is a question of law.
¶ 17 "It is settled law that to preserve an issue for judicial review, a party must raise it before the administrative agency." Bunker v. LIRC , 2002 WI App 216, ¶ 15, 257 Wis. 2d 255, 650 N.W.2d 864. "Ordinarily a reviewing court will not consider issues beyond those properly raised before the administrative agency, and failure to raise an issue generally constitutes a [forfeiture[2] ] of the right to raise the issue before the reviewing court." Id. "However, this rule is one of administration, not of power, and therefore the reviewing court has the power to decide issues that were not raised before the administrative agency." Id. "Where all the necessary facts are of record and the issue is a legal one of great importance, reviewing courts may choose to decide that issue." Id. , ¶ 16. The decision to overlook forfeiture is thus discretionary, not a question of law.
¶ 18 The circuit court here decided to overlook forfeiture because it determined that "all of the facts are in the complete record and the issue of a good faith determination under the statute is a legal one of great importance[.]" The Commission contends that this was error, asserting that "[t]he legal issue is not one of great importance because it has already been resolved by the supreme court" in Flug , 376 Wis. 2d 571.
¶ 19 We reject the Commission's argument. The Flug opinion was released nearly eight months after the circuit court's decision in this case. At the time the circuit court was called upon to consider whether Payton-Myrick had forfeited her argument, it did not have the benefit of the Flug decision to guide it regarding the good faith issue. We are not persuaded that the circuit court erroneously exercised its discretion when it decided to overlook Payton-Myrick's failure to raise her WIS. STAT. § 102.42(1m) claim before the Commission. We therefore affirm that portion of the circuit court's decision to overlook an otherwise forfeited claim.
II. The Commission's Decision and the WIS. STAT. § 102.42(1m) Claim
¶ 20 When we review a decision on worker's compensation benefits, we review the decision of the Commission, not the decisions of the ALJ or the circuit court. See XCel Energy Servs., Inc. v. LIRC , 2013 WI 64, ¶ 26, 349 Wis. 2d 234, 833 N.W.2d 665. The scope of judicial review of the Commission's decision is circumscribed by statute. See Wehr Steel Co. v. DILHR , 106 Wis. 2d 111, 116, 315 N.W.2d 357 (1982). "The findings of fact made by the [C]ommission acting within its powers shall, in the absence of fraud, be conclusive." WIS. STAT. § 102.23(1)(a)1. A reviewing court may not substitute its judgment for the Commission's. See § 102.23(6). Rather, we uphold those findings of fact so long as there is "credible and substantial evidence in the record on which reasonable persons could rely in reaching the same findings."[3] XCel Energy , 349 Wis. 2d 234, ¶ 48. However, "[t]he court is not bound by the agency's determination of a question of law." Wehr Steel , 106 Wis. 2d at 117.
¶ 21 Under WIS. STAT. § 102.42(1m), "[i]f an employee who has sustained a compensable injury undertakes in good faith invasive treatment that is generally medically acceptable, but that is unnecessary, the employer shall pay disability indemnity for all disability incurred as a result of that treatment." The Commission concluded that Payton-Myrick had suffered a lumbar strain as the result of her workplace injury and that the injury had healed by February 23, 2010, before the surgeries that caused her disability, so she was not entitled to benefits for any disability sustained after the surgeries.
¶ 22 On review, the circuit court noted "conflicting evidence regarding [Payton-Myrick's] medical diagnosis" and likened this case to Honthaners Restaurants, Inc. v. LIRC , 2000 WI App 273, 240 Wis. 2d 234, 621 N.W.2d 660. In Honthaners , this court held that because the employee "suffered an undisputed compensable injury which generated a conflict between the medical experts as to the degree of her injury and its duration, she is entitled to be compensated for her additional medical treatment and her expenses because she accepted the additional treatment in good faith." Id. , ¶ 2. The circuit court in this case thus concluded that because there was conflict between the medical experts, the Commission needed to determine whether Payton-Myrick had undertaken her surgeries in good faith, so it vacated the Commission's decision and remanded the matter for further proceedings.
¶ 23 However, as noted above, the circuit court did not have the supreme court's Flug decision to guide its analysis. We do, and we conclude that Flug requires us to reverse the circuit court and reinstate the Commission's decision.
¶ 24 Flug is quite similar to Payton-Myrick's case. Tracie L. Flug had an underlying degenerative disc disease when she suffered a soft-tissue strain at work. See id. , 376 Wis. 2d 571, ¶ 1. Her doctor treated her for the strain. See id. , ¶ 2. Flug was then referred to an occupational medicine specialist, who noted some changes on her spinal x-ray but concluded that those changes had no link to her work injury. See id. , ¶ 3. This specialist then referred Flug to a neurosurgeon because some aspects of her condition were not improving; the neurosurgeon recommended a spinal surgery, which he performed. See id. , ¶ 4. When Flug returned to work, she was assessed with a permanent partial disability. See id. Flug sought benefits including benefits for "a 20 percent permanent partial disability consequent to her back surgery." See id. , ¶ 6.
¶ 25 The independent medical examiner brought on by her employer concluded that Flug had two unrelated medical issues: the work injury and the disc disease. See id. , ¶ 7. He opined that her work injury was only a soft issue and shoulder strain that would have resolved long before the back surgery. See id. , ¶ 8. He also thought that there was no relationship between her work injury and the disc degeneration, so the surgery "was not 'reasonable, necessary or related' " to the work injury. See id. , ¶ 9. For purposes of litigation, the occupational medicine specialist submitted a report stating that the work injury had "precipitated, aggravated, or accelerated the preexisting condition beyond its normal progression." See id. , ¶ 10.
¶ 26 The ALJ concluded that Flug had received all the benefits to which she was entitled. See id. , ¶ 12. The Commission upheld that determination. See id. The circuit court affirmed, finding that notwithstanding a factual error by the Commission, there was a sufficient factual basis for the Commission to deny benefits. See id. , ¶ 13. The court of appeals reversed the circuit court, stating that under WIS. STAT. § 102.42(1m), the employee only had to have a good faith belief that the treatment undertaken was necessary. Flug , 376 Wis. 2d 571, ¶ 14.
¶ 27 The supreme court analyzed what it means when treatment is medically acceptable but "unnecessary" under the statute. See id. , ¶ 25. It concluded that "the treatments contemplated by the statute"-that is, those that are medically acceptable but turn out to be unnecessary-"are those that are generally medically acceptable as a treatment of the compensable injury." See id. , ¶ 36. That is, "an employee is not eligible for benefits under Wis. Stat. § 102.42(1m) if the disability-causing treatment was directed at treating something other than the employee's compensable injury." Flug , 376 Wis. 2d 571, ¶ 43. The Commission found, as a factual matter, that Flug's surgery treated her pre-existing condition, so she was not entitled to disability benefits. See id. , ¶¶ 23, 43.
¶ 28 This is where Flug differs from Honthaners , and it is why Flug is more like Payton-Myrick's case. While the employee in Honthaners continued with treatment beyond the date when a different doctor thought she should be healed, there was no dispute that the allegedly unnecessary treatment was aimed at the workplace injury. See Honthaners , 240 Wis. 2d 234, ¶¶ 5-7, 16-17, 22. In Payton-Myrick's case, the Commission determined as a factual matter that Payton-Myrick's work injury was a lumbar strain that healed as of February 23, 2010, and that the work injury "did not precipitate, aggravate, and accelerate her pre-existing condition beyond its normal progression to the point of necessitating a fusion surgery or resulting in permanent disability."
¶ 29 In other words, the Commission found that Payton-Myrick's disability-causing surgeries treated her pre-existing condition, not her compensable work injury. See Flug , 376 Wis. 2d 571, ¶ 24 ("For purposes of this analysis, we must know whether ... the Commission believed the surgery addressed [the employee's] compensable injury, or instead her pre-existing condition."). Because of this factual determination, good faith becomes an irrelevant consideration. Disability resulting from treatment that is not necessary for treating the work injury is not compensable under the worker's compensation scheme or WIS. STAT. § 102.42(1m). The Commission's factual determination is supported by credible and substantial evidence as described herein. Thus, the Commission's decision denying further benefits to Payton-Myrick stands, and that portion of the circuit court's order vacating the Commission's decision and remanding the matter to the Commission for further proceedings is reversed.
By the Court. -Order affirmed in part, reversed in part.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The court in Bunker v. LIRC , 2002 WI App 216, ¶ 15, 257 Wis. 2d 255, 650 N.W.2d 864, used the term "waiver" rather than "forfeiture." Bunker was decided before the supreme court clarified the distinction between the two concepts in State v. Ndina , 2009 WI 21, ¶¶ 28-32, 315 Wis. 2d 653, 761 N.W.2d 612. Forfeiture, " 'the failure to make the timely assertion of a right,' " is a more appropriate descriptor for the failure to raise an issue than is waiver, " 'the intentional relinquishment or abandonment of a known right.' " See id. , ¶ 29 (citation omitted).

Payton-Myrick does not argue that the Commission erred when it overruled the ALJ's factual determinations and made its own, but any such challenge would have failed. Ultimately, the Commission and not the ALJ is vested with fact-finding responsibility. See Hakes v. LIRC , 187 Wis. 2d 582, 589, 523 N.W.2d 155 (Ct. App. 1994). Here, the Commission followed the appropriate procedures for rejecting the ALJ's fact-finding; it consulted with the ALJ and issued a memorandum decision explaining why it rejected the ALJ's factual findings. See id. at 588.